(Slip Opinion) OCTOBER TERM, 2008 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ARTHUR ANDERSEN LLP ET AL. *v.* CARLISLE ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 08–146. Argued March 3, 2009—Decided May 4, 2009

After consulting with petitioners, respondents Wayne Carlisle, James Bushman, and Gary Strassel used a shelter to minimize taxes from the sale of their company. Limited liability corporations created by Carlisle, Bushman, and Strassel (also respondents) entered into investment-management agreements with Bricolage Capital, LLC, that provided for arbitration of disputes. After the Internal Revenue Service found the tax shelter illegal, respondents filed a diversity suit against petitioners. Claiming that equitable estoppel required respondents to arbitrate their claims per the agreements with Bricolage, petitioners invoked §3 of the Federal Arbitration Act (FAA), 9 U. S. C. §3, which entitles litigants to stay an action that is "referable to arbitration under an agreement in writing." Section 16(a)(1)(A) of the FAA allows an appeal from "an order . . . refusing a stay of any action under section 3." The District Court denied petitioners' stay motions, and the Sixth Circuit dismissed their interlocutory appeal for want of jurisdiction.

*Held:*

1. The Sixth Circuit had jurisdiction to review the denial of petitioners' requests for a §3 stay. By its clear and unambiguous terms, §16(a)(1)(A) entitles any litigant asking for a §3 stay to an immediate appeal from that motion's denial—regardless of whether the litigant is in fact eligible for a stay. Jurisdiction over the appeal "must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order," *Behrens* v. *Pelletier*, 516 U. S. 299, 311. The statute unambiguously makes the underlying merits irrelevant, for even a request's utter frivolousness cannot turn a denial into something other than "an order . . . refusing a stay of any action under section 3," §16(a)(1)(A).

Syllabus

Pp. 3–5.

2. A litigant who was not a party to the arbitration agreement may invoke §3 if the relevant state contract law allows him to enforce the agreement. Neither FAA §2—the substantive mandate making written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract"—nor §3 purports to alter state contract law regarding the scope of agreements. Accordingly, whenever the relevant state law would make a contract to arbitrate a particular dispute enforceable by a nonsignatory, that signatory is entitled to request and obtain a stay under §3 because that dispute is "referable to arbitration under an agreement in writing." Because traditional state-law principles allow enforcement of contracts by (or against) nonparties through, *e.g.,* assumption or third-party beneficiary theories, the Sixth Circuit erred in holding that §3 relief is categorically not available to nonsignatories. Questions as to the nature and scope of the applicable state contract law in the present case have not been briefed here and can be addressed on remand. Pp. 5–8

521 F. 3d 597, reversed and remanded.

SCALIA, J., delivered the opinion of the Court, in which KENNEDY, THOMAS, GINSBURG, BREYER, and ALITO, JJ., joined. SOUTER, J., filed a dissenting opinion, in which ROBERTS, C. J., and STEVENS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

––––––––––

No. 08–146

––––––––––

## ARTHUR ANDERSEN LLP, ET AL., PETITIONERS *v.* WAYNE CARLISLE ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[May 4, 2009]

JUSTICE SCALIA delivered the opinion of the Court.

Section 3 of the Federal Arbitration Act (FAA) entitles litigants in federal court to a stay of any action that is "referable to arbitration under an agreement in writing." 9 U. S. C. §3. Section 16(a)(1)(A), in turn, allows an appeal from "an order . . . refusing a stay of any action under section 3." We address in this case whether appellate courts have jurisdiction under §16(a) to review denials of stays requested by litigants who were not parties to the relevant arbitration agreement, and whether §3 can ever mandate a stay in such circumstances.

I

Respondents Wayne Carlisle, James Bushman, and Gary Strassel set out to minimize their taxes from the 1999 sale of their construction-equipment company. Arthur Andersen LLP, a firm that had long served as their company's accountant, auditor, and tax adviser, introduced them to Bricolage Capital, LLC, which in turn referred them for legal advice to Curtis, Mallet-Prevost, Colt & Mosle, LLP. According to respondents, these advisers recommended a "leveraged option strategy" tax

shelter designed to create illusory losses through foreign-currency-exchange options. As a part of the scheme, respondents invested in various stock warrants through newly created limited liability corporations (LLCs), which are also respondents in this case. The respondent LLCs entered into investment-management agreements with Bricolage, specifying that "[a]ny controversy arising out of or relating to this Agreement or the br[ea]ch thereof, shall be settled by arbitration conducted in New York, New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association." App. 80–81, 99–100, 118–119.

As with all that seems too good to be true, a controversy did indeed arise. The warrants respondents purchased turned out to be almost entirely worthless, and the Internal Revenue Service (IRS) determined in August 2000 that the "leveraged option strategy" scheme was an illegal tax shelter. The IRS initially offered conditional amnesty to taxpayers who had used such arrangements, but petitioners failed to inform respondents of that option. Respondents ultimately entered into a settlement program in which they paid the IRS all taxes, penalties, and interest owed.

Respondents filed this diversity suit in the Eastern District of Kentucky against Bricolage, Arthur Andersen and others[1] (all except Bricolage and its employees hereinafter referred to as petitioners), alleging fraud, civil conspiracy, malpractice, breach of fiduciary duty, and

---

[1] Also named in the suit were two employees of Bricolage (Andrew Beer and Samyak Veera); Curtis, Mallet-Prevost, Colt & Mosle, LLP; William Bricker (the lawyer respondents worked with at the law firm); Prism Connectivity Ventures, LLC (the entity from whom the worthless warrants were purchased); Integrated Capital Associates, Inc. (a prior owner of the worthless warrants who had also been a client of the law firm); and Intercontinental Pacific Group, Inc. (a firm with the same principals as Integrated Capital Associates).

negligence. Petitioners moved to stay the action, invoking §3 of the FAA and arguing that the principles of equitable estoppel demanded that respondents arbitrate their claims under their investment agreements with Bricolage.[2] The District Court denied the motions.

Petitioners filed an interlocutory appeal, which the Court of Appeals for the Sixth Circuit dismissed for want of jurisdiction. *Carlisle* v. *Curtis, Mallet-Prevost, Colt & Mosle, LLP,* 521 F. 3d 597, 602 (2008). We granted certiorari, 555 U. S. ___ (2008).

## II

Ordinarily, courts of appeals have jurisdiction only over "final decisions" of district courts. 28 U. S. C. §1291. The FAA, however, makes an exception to that finality requirement, providing that "an appeal may be taken from . . . an order . . . refusing a stay of any action under section 3 of this title." 9 U. S. C. §16(a)(1)(A). By that provision's clear and unambiguous terms, any litigant who asks for a stay under §3 is entitled to an immediate appeal from denial of that motion—regardless of whether the litigant is in fact eligible for a stay. Because each petitioner in this case explicitly asked for a stay pursuant to §3, App. 52, 54, 63, 65, the Sixth Circuit had jurisdiction to review the District Court's denial.

The courts that have declined jurisdiction over §3 appeals of the sort at issue here have done so by conflating the jurisdictional question with the merits of the appeal. They reason that because stay motions premised on equitable estoppel seek to expand (rather than simply vindicate) agreements, they are not cognizable under §§3 and 4, and therefore the relevant motions are not actually "under" those provisions. See, in addition to the opinion

─────────

[2] Bricolage also moved for a stay under §3, but it filed for bankruptcy while its motion was pending, and the District Court denied the motion as moot.

below, 521 F. 3d, at 602, *DSMC Inc.* v. *Convera Corp.*, 349 F. 3d 679, 682–685 (CADC 2003); *In re Universal Serv. Fund Tel. Billing Practice Litigation* v. *Sprint Communications Co.*, 428 F. 3d 940, 944–945 (CA10 2005). The dissent makes this step explicit, by reading the appellate jurisdictional provision of §16 as "calling for a look-through" to the substantive provisions of §3. *Post*, at 2. Jurisdiction over the appeal, however, "must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order." *Behrens* v. *Pelletier*, 516 U. S. 299, 311 (1996).[3] The jurisdictional statute here unambiguously makes the underlying merits irrelevant, for even utter frivolousness of the underlying request for a §3 stay cannot turn a denial into something other than "an order . . . refusing a stay of any action under section 3." 9 U. S. C. §16(a).

Respondents argue that this reading of §16(a) will produce a long parade of horribles, enmeshing courts in fact-intensive jurisdictional inquiries and permitting frivolous interlocutory appeals. Even if these objections could

———————

[3] Federal courts lack subject-matter jurisdiction when an asserted federal claim is "'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 89 (1998) (quoting *Oneida Indian Nation of N. Y.* v. *County of Oneida*, 414 U. S. 661, 666 (1974)). Respondents have not relied upon this line of cases as an alternative rationale for rejection of jurisdiction, and there are good reasons for treating subject-matter jurisdiction differently, in that respect, from the appellate jurisdiction here conferred. A frivolous federal claim, if sufficient to confer jurisdiction, would give the court power to hear related state-law claims, see 28 U. S. C. §1367; no such collateral consequences are at issue here. And while an insubstantial federal claim can be said not to "aris[e] under the Constitution, laws, or treaties of the United States," §1331, insubstantiality of the merits can hardly convert a judge's "order . . . refusing a stay" into an "order . . . refusing" something else. But we need not resolve this question today.

surmount the plain language of the statute, we would not be persuaded. Determination of whether §3 was invoked in a denied stay request is immeasurably more simple and less factbound than the threshold determination respondents would replace it with: whether the litigant was a party to the contract (an especially difficult question when the written agreement is not signed). It is more appropriate to grapple with that merits question after the court has accepted jurisdiction over the case. Second, there are ways of minimizing the impact of abusive appeals. Appellate courts can streamline the disposition of meritless claims and even authorize the district court's retention of jurisdiction when an appeal is certified as frivolous. See *Behrens*, *supra,* at 310–311. And, of course, those inclined to file dilatory appeals must be given pause by courts' authority to "award just damages and single or double costs to the appellee" whenever an appeal is "frivolous." Fed. Rule App. Proc. 38.

## III

Even if the Court of Appeals were correct that it had no jurisdiction over meritless appeals, its ground for finding this appeal meritless was in error. We take the trouble to address that alternative ground, since if the Court of Appeals is correct on the merits point we will have awarded petitioners a remarkably hollow victory. We consider, therefore, the Sixth Circuit's underlying determination that those who are not parties to a written arbitration agreement are categorically ineligible for relief.

Section 2—the FAA's substantive mandate—makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." That provision creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts "to place such agreements upon the same footing as other con-

tracts.”  *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 478 (1989) (internal quotation marks omitted).  Section 3, in turn, allows litigants already in federal court to invoke agreements made enforceable by §2.  That provision requires the court, “on application of one of the parties,”[4] to stay the action if it involves an “issue referable to arbitration under an agreement in writing.”  9 U. S. C. §3.

Neither provision purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them).  Indeed §2 explicitly retains an external body of law governing revocation (such grounds “as exist at law or in equity”).[5]  And we think §3 adds no substantive restriction to §2’s enforceability mandate.  “[S]tate law,” therefore, is applicable to determine which contracts are binding under §2 and enforceable under §3 “*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.”  *Perry* v. *Thomas*, 482 U. S. 483, 493, n. 9 (1987).  See also *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938, 944 (1995).  Because “tradi-

————————

[4] Respondents do not contest that the term “parties” in §3 refers to parties to the litigation rather than parties to the contract.  The adjacent provision, which explicitly refers to the “subject matter of a suit arising out of the controversy between the parties,” 9 U. S. C. §4, unambiguously refers to adversaries in the action, and “identical words and phrases within the same statute should normally be given the same meaning,” *Powerex Corp.* v. *Reliant Energy Services, Inc.*, 551 U. S. 224, 232 (2007).  Even without benefit of that canon, we would not be disposed to believe that the statute allows a party to the contract who is not a party to the litigation to apply for a stay of the proceeding.

[5] We have said many times that federal law requires that “questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration.”  *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 24–25 (1983).  Whatever the meaning of this vague prescription, it cannot possibly require the disregard of state law *permitting* arbitration by or against nonparties to the written arbitration agreement.

tional principles" of state law allow a contract to be enforced by or against nonparties to the contract through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel," 21 R. Lord, Williston on Contracts §57:19, p. 183 (4th ed. 2001), the Sixth Circuit's holding that nonparties to a contract are categorically barred from §3 relief was error.

Respondents argue that, as a matter of federal law, claims to arbitration by nonparties are not "referable to arbitration *under* an agreement in writing," 9 U. S. C. §3 (emphasis added), because they "seek to bind a signatory to an arbitral obligation *beyond* that signatory's strictly contractual obligation to arbitrate," Brief for Respondents 26. Perhaps that would be true if §3 mandated stays only for disputes between parties to a written arbitration agreement. But that is not what the statute says. It says that stays are required if the claims are "referable to arbitration under an agreement in writing." If a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the statute's terms are fulfilled.[6]

Respondents' final fallback consists of reliance upon dicta in our opinions, such as the statement that "arbitration . . . is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration," *First Options, supra,* at 943, and the statement that "[i]t goes without saying that a contract cannot bind a

---

[6] We thus reject the dissent's contention that contract law's longstanding endorsement of third-party enforcement is "a weak premise for inferring an intent to allow third parties to obtain a §3 stay," *post*, at 2. It seems to us not weak at all, in light of the terms of the statute. There is no doubt that, where state law permits it, a third-party claim is "referable to arbitration under an agreement in writing." It is not our role to conform an unambiguous statute to what we think "Congress probably intended," *post*, at 2.

nonparty," *EEOC* v. *Waffle House, Inc.*, 534 U. S. 279, 294 (2002). The former statement pertained to *issues* parties agreed to arbitrate, and the latter referred to an entity (the Equal Employment Opportunity Commission) which obviously had no third-party obligations under the contract in question. Neither these nor any of our other cases have presented for decision the question whether arbitration agreements that are otherwise enforceable by (or against) third parties trigger protection under the FAA.

Respondents may be correct in saying that courts' application of equitable estoppel to impose an arbitration agreement upon strangers to the contract has been "somewhat loose." Brief for Respondents 27, n. 15. But we need not decide here whether the relevant state contract law recognizes equitable estoppel as a ground for enforcing contracts against third parties, what standard it would apply, and whether petitioners would be entitled to relief under it. These questions have not been briefed before us and can be addressed on remand. It suffices to say that no federal law bars the State from allowing petitioners to enforce the arbitration agreement against respondents and that §3 would require a stay in this case if it did.

\*          \*          \*

We hold that the Sixth Circuit had jurisdiction to review the denial of petitioners' request for a §3 stay and that a litigant who was not a party to the relevant arbitration agreement may invoke §3 if the relevant state contract law allows him to enforce the agreement. The judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 08–146

ARTHUR ANDERSEN LLP, ET AL., PETITIONERS
*v.* WAYNE CARLISLE ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[May 4, 2009]

JUSTICE SOUTER, with whom THE CHIEF JUSTICE and JUSTICE STEVENS join, dissenting.

Section 16 of the Federal Arbitration Act (FAA) authorizes an interlocutory appeal from the denial of a motion under §3 to stay a district court action pending arbitration. The question is whether it opens the door to such an appeal at the behest of one who has not signed a written arbitration agreement. Based on the longstanding congressional policy limiting interlocutory appeals, I think the better reading of the statutory provisions disallows such an appeal, and I therefore respectfully dissent.

Section 16(a) of the FAA provides that "[a]n appeal may be taken from . . . an order . . . refusing a stay of any action under section 3 of this title." 9 U. S. C. §16(a). The Court says that any litigant who asks for and is denied a §3 stay is entitled to an immediate appeal. *Ante*, at 3. The majority's assumption is that "under section 3" is merely a labeling requirement, without substantive import, but this fails to read §16 in light of the "firm congressional policy against interlocutory or 'piecemeal' appeals." *Abney* v. *United States*, 431 U. S. 651, 656 (1977).

The right of appeal is "a creature of statute," *ibid.*, and Congress has granted the Federal Courts of Appeals jurisdiction to review "final decisions," 28 U. S. C. §1291. "This insistence on finality and prohibition of piecemeal review

discourage undue litigiousness and leaden-footed administration of justice." *DiBella* v. *United States*, 369 U. S. 121, 124 (1962). Congress has, however, "recognized the need of exceptions for interlocutory orders in certain types of proceedings where the damage of error unreviewed before the judgment is definitive and complete . . . has been deemed greater than the disruption caused by intermediate appeal." *Ibid.* Section 16 functions as one such exception, but departures from "the dominant rule in federal appellate practice," 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶110.06 (2d ed. 1996), are extraordinary interruptions to the normal process of litigation and ought to be limited carefully.

An obvious way to limit the scope of such an extraordinary interruption would be to read the §16 requirement that the stay have been denied "under section 3" as calling for a look-through to the provisions of §3, and to read §3 itself as offering a stay only to signatories of an arbitration agreement. It is perfectly true that in general a third-party beneficiary can enforce a contract, but this is a weak premise for inferring an intent to allow third parties to obtain a §3 stay and take a §16 appeal. While it is hornbook contract law that third parties may enforce contracts for their benefit as a matter of course, interlocutory appeals are a matter of limited grace. Because it would therefore seem strange to assume that Congress meant to grant the right to appeal a §3 stay denial to anyone as peripheral to the core agreement as a nonsignatory, it follows that Congress probably intended to limit those able to seek a §3 stay.

Asking whether a §3 movant is a signatory provides a bright-line rule with predictable results to aid courts in determining jurisdiction over §16 interlocutory appeals. And that rule has the further virtue of mitigating the risk of intentional delay by savvy parties who seek to frustrate litigation by gaming the system. Why not move for a §3

stay? If granted, arbitration will be mandated, and if denied, a lengthy appeal may wear down the opponent. The majority contends, *ante*, at 5, that "there are ways of minimizing the impact of abusive appeals." Yes, but the sanctions suggested apply to the frivolous, not to the far-fetched; and as the majority's opinion concludes, such an attenuated claim of equitable estoppel as petitioners raise here falls well short of the sanctionable.

Because petitioners were not parties to the written arbitration agreement, I would hold they could not move to stay the District Court proceedings under §3, with the consequence that the Court of Appeals would have no jurisdiction under §16 to entertain their appeal. I would accordingly affirm the judgment of the Sixth Circuit.