**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0587n.06

No. 10-3712

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 07, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CAROL L. SHELLY, fka CAROL L. | ) | NORTHERN DISTRICT OF OHIO |
| TOWELL; TIMOTHY H. SHELLY; | ) | |
| JOANN MYERS, as Trustee of other UBEE | ) | |
| Rental Land Trust also known as UBEE | ) | |
| Rental Land Trust Trust, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: SUTTON, MCKEAGUE and RIPPLE,[*] Circuit Judges.

SUTTON, Circuit Judge. After Carol and Timothy Shelly failed to file tax returns for several years in the 1990s, the United States assessed tax deficiencies against them. The United States sued to convert the tax assessments to a judgment and foreclosed on tax liens it held on the Shellys' property. The district court ruled for the government as a matter of law, and so do we.

I.

The Shellys, husband and wife, own Shelly Glass and Upholstery, located at 426 College Street in Wadsworth, Ohio. In 1992, they purchased a "trust package" and began transferring their

---

[*]The Honorable Kenneth F. Ripple, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

business and personal assets into five separate trusts. "Relying on poor advice and [this] ill-advised trust package," neither Carol nor Timothy Shelly filed federal income tax returns for the years 1991 through 1994. Shellys' Br. at 4. This tax-avoidance scheme turned out to be too good to be true—a "sham" in Carol's words—and generated considerable tax liabilities. R.45-3 at 15, 18–20.

But that did not make the Shellys willing taxpayers. In May 1994, the IRS wrote Timothy at his business address—426 College Street—to arrange a meeting with an IRS agent. Timothy doubled down on the couple's tax position. He responded with a letter, entitled "Refusal for Cause Without Dishonor," saying that "[o]nly a taxpayer would have to determine a proper tax liability" and informing the IRS that "unless you have some fact . . . to support your conclusions that I need to determine a proper tax liability, then you must consider this matter resolved." R.60-3 at 1–3. The letter also stated: "426 College St. . . . is not the address. . . . The mailing location is: Timothy H. Shelly, c/o P.O. Box 503, Wadsworth, Ohio state, non-domestic postal zone 44281." *Id*. at 1.

In December 1994, the IRS mailed a similar letter and a summons to Carol at the P.O. Box address. R.60-5 at 1–3. The postman returned the summons, marked "refused." *Id*. The IRS sent a second summons in March 1995, this time to the 426 College Street address, where Carol received it. R.60-6 at 1–2. Carol filed a petition to quash both summonses in the district court, disclaiming receipt of the first summons and claiming both summonses were "defective and unenforceable due [to the IRS's] . . . failure to provide notice to [Carol Shelly] at her proper mailing location and in her proper Christian name despite previous and direct instructions to the [IRS]." R.45-8 at 5–6.

In October 1997, the IRS mailed separate notices of deficiency to Carol and Timothy Shelly at the 426 College Street address. The Shellys did not respond or file an appeal in the Tax Court to challenge the notices. In March 1998, the IRS assessed the deficiencies and penalties against them.

Timothy encountered more tax trouble when he filed his 2003 tax return late, in January 2005. In June 2005, the IRS mailed Timothy a notice of deficiency for his 2003 taxes at the P.O. Box address, with no response. In August 2005, the IRS sent a second notice of deficiency for a larger amount. A few months later, Timothy sent a letter to the IRS attempting to pay the original 2003 deficiency, but the IRS insisted he pay the full deficiency.

The government sued the Shellys in March 2008 to collect all of the deficiencies against them. Carol received an abatement for some of her tax liability and reduced her remaining liability with some payments. After receiving additional documents from the Shellys during discovery, the IRS reduced the deficiencies for the 1991 to 1993 tax years and eliminated the deficiency for 1994. In the end, the government sought $117,388.21 from Carol for the 1991 tax year and $403,422.14 from Timothy for the 1991–1993 and 2003 tax years.

The parties filed cross-motions for summary judgment. The district court granted summary judgment to the government.

II.

*Summary judgment.* In challenging the court's summary judgment decision, the Shellys argue that the government (1) failed to establish an evidentiary foundation for the assessments, (2) relied on improper evidence, (3) increased Timothy Shelly's tax liability for 2003 after it had already issued a deficiency for a lower amount and (4) did not establish that it used certified mail when corresponding with the Shellys. None of these arguments has merit.

*First*, the government's determination of a tax deficiency is presumptively correct, requiring the taxpayer to prove that it is erroneous or arbitrary. *Kearns v. Comm'r*, 979 F.2d 1176, 1178 (6th Cir. 1992); *see Ekman v. Comm'r*, 184 F.3d 522, 524–25 (6th Cir. 1999). That is particularly so with respect to deductions because the taxpayer usually is the only person with documents substantiating them. *United States v. Walton*, 909 F.2d 915, 918 (6th Cir. 1990).

In this instance, the Shellys offered no evidence at summary judgment to counter the government's calculation of the deficiency. In the words of the district court, they provided "[n]o affidavits, documentary evidence, or eve[n] references to deposition transcripts . . . in their filings." Absent contrary evidence, the Shellys did not meet their burden of establishing eligibility for the deductions.

The Shellys resist this conclusion on the ground that the government's method of accounting for cancelled checks they provided was "arbitrary" because it allowed business-expense deductions for their cancelled checks only when the checks had matching business-related invoices. Br. at 16.

Why this amounts to an arbitrary accounting requirement is beyond us. By themselves, the cancelled checks indicate only that the Shellys spent money on something, not that they did what is required to obtain a deduction: incur business-related expenses. Making matters worse, the Shellys did not rely on the cancelled checks until *after* the district court had ruled against them. All and all, the argument offers too little and comes too late.

*Second*, the Shellys claim that the government relied on improper evidence to support its assessment because a declaration from the government's attorney, Edward Murphy, supposedly concerned disputed facts, making Murphy a potential witness in the case. *See* Ohio Rules of Professional Conduct Rule 3.7 (lawyer generally shall not be an advocate at a trial where the lawyer is likely to be a necessary witness). But the Shellys forfeited this claim when they opted not to raise it below. "This court will not decide issues or claims not litigated before the district court." *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990).

*Third*, Timothy Shelly complains that the government increased his tax liability for 2003 after it sent him a letter proposing a smaller deficiency. Acknowledging that the first letter was "not binding on the [g]overnment," he nonetheless argues that it "is evidence that the [g]overnment's [current] calculation of the tax deficiency is flawed" and that a genuine issue of material fact exists concerning the 2003 tax liability. Reply Br. at 28. Not so. The government has many potential reasons to increase an assessment over time. It may be willing to accept less in exchange for prompt payment. Think of taxpayer amnesty programs. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 626 (2009). Or it may discover additional information as it investigates a taxpayer's finances further.

Either way, the key point is this: if the government's increases were illegitimate, it was *Timothy Shelly's* responsibility to prove it. *See Walton*, 909 F.2d at 918. The existence of an initial and a later calculation of liability says nothing by itself about which calculation is accurate or why Timothy Shelly is entitled to the lower of the two. The government enjoys a presumption of correctness with respect to its assessments, and Timothy Shelly failed to counter the presumption with evidence.

*Fourth*, the Shellys argue that the government failed to provide evidence showing it communicated with them via certified mail. *See* 26 U.S.C. § 6212(a) (IRS is authorized to send notice of deficiency to the taxpayer by certified or registered mail). The government provided copies of the Shellys' notices of deficiency, which contain the notation "certified mail," R.45-10, and certificates of assessment indicating that the Shellys defaulted on their 90-day notices of deficiency, R.45-12. *See Gentry v. United States*, 962 F.2d 555, 557 (6th Cir. 1992) (certificates of assessment generally regarded as sufficient proof of "the adequacy and propriety of notices" given). There is no requirement that the government provide more evidence than that *unless* the taxpayers challenge their receipt of the mailings by providing contrary evidence. *See Wiley v. United States*, 20 F.3d 222, 227–29 (6th Cir. 1994) (issue of material fact existed where government's mailing records were inadequate *and* taxpayer offered evidence that the government might not have mailed the notice). The Shellys provided no evidence indicating the government failed to mail the notices of deficiency.

*Motion for relief from judgment*. The Shellys also appeal the district court's denial of their motion to set aside the judgment, Fed. R. Civ. P. 60(b), which we review for abuse of discretion, *Yeschick v. Mineta*, 675 F.3d 622, 628 (6th Cir. 2012).

The Shellys argue that the government failed to mail notices to their last known address, *Wiley*, 20 F.3d at 224, because it used their business address after the Shellys asked to be contacted at their post office box. As the district court noted, however, the Shellys refused mail at their post office box while continuing to receive it at their business address. On this record, the district court permissibly, indeed correctly, concluded that "it was not unreasonable for the [g]overnment to conclude that the business address was the proper mailing address" because it "was the only address to which documents were sent and from which the [g]overnment received a response." R.79 at 5.

The Shellys separately argue that the government addressed notices to them with the wrong zip code, which "may have prevented the Shellys from receiving the notice[s]." Shellys' Br. at 35. The Shellys raised this argument for the first time in their motion for a stay pending appeal. They have not challenged the denial of that motion, and accordingly they have forfeited the argument here.

*Motion to amend the judgment*. The district court also denied the Shellys' motion to amend the judgment. Fed. R. Civ. P. 59. The Shellys argue that granting summary judgment to the government was a clear error of law and a manifest injustice, entitling them to an amended judgment. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). These arguments merely recycle the Shellys' earlier (already rejected) arguments. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). The district court did not abuse its discretion in denying them.

III.

For these reasons, we affirm.