BENTON, Circuit Judge,
dissenting.
Because Minnesota equitable-estoppel law and the text of the arbitration agreements compel arbitration, I respectfully dissent from the court’s opinion. The opinion has two, independent, flaws. First, the court misreads the arbitration agreement. Second, the court incorrectly applies choice-of-law principles, thereby omitting an important component of equitable-estoppel doctrine in Minnesota.
I.
The court asserts that this court’s precedents preclude equitable estoppel, ante at 922-24, citing PRM Energy Sys., Inc. v. Primenergy, L.L.C., 592 F.3d 830, 833 (8th Cir.2010); CD Partners, LLC v. Grizzle, 424 F.3d 795, 799 (8th Cir.2005). The court correctly describes the factual circumstances of PRM Energy and CD Partners. The lynchpin of this court’s holding here, however, is that the Retailers’ claims “exist independent of the supply and arbitration agreements,” ante at 923. That statement has no basis in the record, mis *926 reads the arbitration agreement, and leads to an incorrect result in this case.
The arbitration agreements in this case apply to any dispute arising between the parties, not solely those arising under a single contract:
Any controversy, claim or dispute of whatever nature arising between Retailer and SUPERVALU or any other SUPERVALU Entity, as defined below, including but not limited to those arising out of or relating to any agreement between the parties or the breach, termination, enforceability, scope or validity thereof, whether such claim existed prior to, or arises on or after, the Execution Date (a “Dispute”), shall be resolved by mediation or, failing mediation, by binding arbitration. A “SUPERVALU Entity” is defined as SUPERVALU INC. or any other entity that, directly or indirectly, owns or controls, is owned or controlled by, or is under common ownership or control with, SUPERVALU INC.
Although executed on the same date as the Retail Agreements, the arbitration agreement is a separate document. It does not make any reference to the Retail Agreement. By its terms, it applies to any dispute between the parties, whether or not it involves the Retail Agreement. Nevertheless, the court apparently concludes that this arbitration agreement is limited to disputes under the Retail Agreement.
This arbitration agreement is not like the arbitration clauses in PRM Energy and CD Partners. There, the arbitration clauses applied only to disputes related to the contract containing the clause. PRM Energy, 592 F.3d at 837 (Beam, J., dissenting) (“The arbitration clause tangentially at issue here purports to cover ‘all disputes arising under’ a technology licensing agreement between PRM and Primener-gy.”); CD Partners, 424 F.3d at 797 (“Each franchise agreement contained an identical arbitration clause which stated, in relevant part: ‘Except as provided in this Agreement, Franchisor and Franchisee agree that any claim, controversy or dispute arising out of or relating to Franchisee’s operation of the Franchised business under the Agreement ... which cannot be amicably settled shall be referred to Arbitration .... ’ ”). The arbitration clauses in both cases were limited to disputes arising under a specific contract. Therefore, the appropriate inquiry for equitable estoppel was whether the claims were sufficiently “intertwined” with the contract. See PRM Energy, 592 F.3d at 835.
Not so in this case. The arbitration agreement here covers all disputes “including but not limited to those arising out of or relating to any agreement between the parties.” As the district court correctly ruled, this arbitration agreement covers the entire relationship and course of dealing, and would include, for example, later purchase contracts and purchase transactions. The antitrust claims from the Retailers — that purchase prices were inflated — are certainly “intertwined” with and “rely on” the terms of those transactions and the course of dealing between the parties. See id.
The court states: “In both PRM Energy Systems and CD Partners, the plaintiffs’ claims arose directly from violations of the terms of a contract containing an arbitration clause,” ante at 923. Precisely. This case presents a broader arbitration agreement that is not tied solely to claims arising under a specific contract. Yet the court treats them the same. I would hold that the arbitration agreement here compels arbitration based on equitable estop-pel.
*927 II.
The court correctly notes that state law determines whether nonsignatories can enforce arbitration provisions. PRM Energy, 592 F.3d at 833 (8th Cir.2010), citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630-31, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009). Minnesota has recognized equitable estoppel as one method to enforce an arbitration agreement against a nonsig-natory. Onvoy, Inc. v. SHAL, LLC, 669 N.W.2d 344, 356 (Minn.2003), citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir.1999), abrogated on other grounds by Carlisle, 556 U.S. at 631, 129 S.Ct. 1896. The Minnesota Supreme Court’s only discussion of equitable estop-pel — in its entirety — is as follows:
Federal cases have set out at least three principles on which a nonsignatory to a contract can compel arbitration: equitable estoppel, agency, and third-party beneficiary. MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir.1999). Equitable estoppel prevents a signatory from relying on the underlying contract to make his or her claim against the nonsignatory. See id.; Gabriel M. Wilner, Domke on Commercial Arbitration § 10.07 (1983).
Id. Not in Onvoy — or in any other case— does the Minnesota Supreme Court apply equitable estoppel, announce the appropriate test(s) for it, or provide any further insight into Minnesota equitable-estoppel law. Nevertheless, this court holds that “Minnesota appears to follow federal law regarding equitable estoppel,” ante at 927.
Because the Minnesota Supreme Court has not addressed how to apply equitable estoppel, this court must predict how the court would rule. Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir.2010) (“If the highest state court has not decided an issue we must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority.”). Based on the discussion in Onvoy, the only appropriate prediction is that the Minnesota Supreme Court would apply equitable estoppel as expressed in MS Dealer — the only case that court cites.
MS Dealer articulates two separate inquiries for equitable estoppel. “First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause ‘must rely on the terms of the written agreement in asserting [its] claims’ against the nonsignatory.” MS Dealer, 177 F.3d at 947 (alteration in original), quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993). “Second, ‘application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignato-ry and one or more of the signatories of the contract.’ ” Id. (alterations in original), quoting Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423, 1432 (M.D.Ala.1997).
Further, the one Minnesota case applying equitable estoppel is dispensed with by the court because it is unpublished and therefore “not precedential,” ante at 921-22 & n. 5, citing ev3, Inc. v. Collins, No. A08-1816, A08-1901, 2009 WL 2432348, at *1 (Minn.Ct.App. Aug. 11, 2009) (unpublished); Minn.Stat. § 480A.08(3)(c). While it may not be precedential, it provides a persuasive indication of how the Minnesota Supreme Court would apply equitable estoppel. See Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 888 (8th Cir.2000) (relying, in part, on an unpublished Minnesota Court of Appeals case to justify a predicted outcome of the Minnesota Supreme Court); Friedberg v. *928 Chubb & Son, Inc., 832 F.Supp.2d 1049, 1059 n. 7 (D.Minn.2011) (“Bloom [v. Western Nat. Mut. Ins. Co., 2006 WL 1806415 (MinmApp.) ] is an unpublished opinion of the Minnesota Court of Appeals, but the court finds Bloom persuasive in predicting how the Minnesota Supreme Court would interpret the instant policy.”)- The Minnesota Court of Appeals followed the exact approach I suggest — equitable es-toppel as articulated in MS Dealer. ev3, 2009 WL 2432348, at *3 (“[I]n MS Dealer Serv. Corp. v. Franklin, cited by the supreme court in Onvoy, the Eleventh Circuit stated that equitable estoppel allows a nonsignatory to compel arbitration in two different situations see also In re Petters Co., Inc., 480 B.R. 346, 361-62 (Bankr.D.Minn.2012) (explaining that Minnesota courts have adopted these two, separate inquiries for equitable estoppel).
The “relies on” test and the “concerted misconduct” test are separate grounds for equitable estoppel in Minnesota. Under either test, I believe equitable estoppel compels arbitration of the claims in this case.
As discussed in Part I, the Retailers’ claims rely on the course of dealing between the parties and the purchase transactions — all of which are governed by the arbitration agreement. But the court’s analysis should not stop there.
This court should also consider the “concerted misconduct” test of equitable estop-pel. See MS Dealer, 177 F.3d at 947. The court claims to have addressed concerted misconduct by discussing PRM Energy and CD Partners because “in both PRM Energy Systems and CD Partners, we relied heavily on MS Dealer,” ante at 924 n. 8. Even so, this court should be concerned with what the Minnesota Supreme Court’s view would be, and not what this court’s interpretation has been. See McDonough, 608 F.3d at 390.
The Minnesota Court of Appeals held that concerted misconduct is grounds for equitable estoppel. evS, 2009 WL 2432348, at *6. This test is met when the plaintiff alleges “substantially interdependent and concerted misconduct by both the nonsig-natory and one or more of the signatories of the contract.” MS Dealer, 177 F.3d at 947. That is what happened here. The Retailers allege that SuperValu and C & S acted in concert through the Asset Exchange Agreement to establish separate territories, eliminate competition, and raise prices.
The PRM Energy case supports this conclusion: “PRM specifically allege[d] coordinated behavior between a signatory and a non-signatory” and “[cjollusive conduct between Kobe Steel and Primenergy allegedly arose from this potential relationship.” PRM Energy, 592 F.3d at 836. Further, even if concerted misconduct requires the claims to be intertwined with the contraet(s) subject to arbitration, that nexus is present, as discussed in Part I.
I would hold that the concerted misconduct alleged in this case also establishes equitable estoppel and compels arbitration.
III.
Finding that equitable estoppel compels arbitration would require this court to address King Cole’s and the Village Markets’ argument that the arbitration agreements are unenforceable on public-policy grounds because arbitration would be prohibitively expensive. This argument is foreclosed by the Supreme Court. AT & T Mobility LLC v. Concepcion, — U.S. -, 131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011). But see In re Am. Express Merchants’ Litig., 667 F.3d 204, 217-18 (2d Cir.), cert. granted sub nom. Am. Express Co. v. Ital *929 ian Colors Restaurant, — U.S.-, 133 S.Ct. 594, 184 L.Ed.2d 390 (2012).
‡ ‡ ‡ ‡ $ ‡
I respectfully dissent from the court’s opinion, and would affirm the judgment of the district court.