**AFFIRMED; and Opinion Filed March 31, 2020**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-00495-CV**

**NATIONAL CLAIMS NEGOTIATORS LLC, Appellant**

**V.**

**JUAN GUERRA, AMANDA CARDENAS, CESAR QUINONES, FERNANDO MARIN, KEVIN CLAY, BARRY NIX, SANDRA NIX, JUAN DELTORO, GLEN MOORE, GAIL MOORE, ESMERELDA HERNANDEZ, AND FERMIN LOPEZ, Appellees**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-07967**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Carlyle

A group of homeowners[1] filed this lawsuit against multiple attorneys, "door-to-door solicitors," and insurance adjusters, including public adjuster National Claims Negotiators LLC (NCN), alleging fraud and other individual and class claims regarding insurance proceeds for roof repairs. The attorney defendants moved to

---

[1] The homeowner plaintiffs/appellees in this case are Juan Guerra, Amanda Cardenas, Cesar Quinones, Fernando Marin, Kevin Clay, Barry Nix, Sandra Nix, Juan Deltoro, Glen Moore, Gail Moore, Esmerelda Hernandez, and Fermin Lopez.

compel arbitration of claims asserted against them by two appellees, Juan Guerra and Juan Deltoro, with whom they had signed arbitration agreements. After the trial court granted that motion, NCN moved to stay the litigation against it until the attorney defendants' arbitration concluded. The trial court denied NCN's motion to stay. NCN then filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.016; 9 U.S.C. § 16(a)(1).

In a single issue on appeal, NCN contends the trial court abused its discretion by denying NCN's requested stay. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.7.

**Background**

In their live petition, appellees described the defendants as falling into three groups: door-to-door solicitors, public insurance adjusters, and attorneys. According to appellees, defendants "have set up a scam using Texas insurance policyholders as pawns to make themselves rich at the expense of Texas homeowners." The "elaborate web" begins with the door-to-door solicitors "telling a homeowner his/her roof is damaged and they can get the homeowner's insurer to buy the homeowner a new roof." "Following these door-to-door salesmen attempting to collect payment from the homeowner's insurer, the next play is to bring in a 'public adjuster' or person(s) alleged to be public adjusters as the second level of the claim." The public adjuster "will then charge the homeowner a ten percent (10%) fee 'to represent' the homeowner" and "charge the homeowner additional fees to inspect the home and

–2–

for reports to allegedly advance the homeowner's claims." When the public adjuster "fails to recover any payment, or more likely does nothing substantive to settle the homeowner's claims," an attorney "is brought in." The door-to-door solicitors "provide the homeowner with agreements to sign for the public adjuster and the lawyer." The homeowner ultimately receives a "settlement share" with "inappropriate" amounts deducted. Appellees alleged that "[b]y the time a lawyer gets involved, the homeowner is saddled with a 10% contingency fee from the public adjuster as well as other unnecessary and perhaps even fraudulent expenses" and "the lawyer then heaps a 30% or more contingency fee as well as other unnecessary and perhaps even fraudulent expenses on the Texas homeowner."

The petition separately described each appellee's experience involving the defendants and asserted (1) claims against "all defendants" for fraud, barratry, breach of fiduciary duty, violation of the Texas Deceptive Trade Practices Act, aiding and abetting breaches of fiduciary duty, conspiracy, and vicarious liability; (2) claims against NCN and other non-attorney defendants for "alter ego"; (3) claims against the door to door solicitors for conversion; and (4) "class claims" against each defendant group for fraud and breach of fiduciary duties. Mr. Guerra and Mr. Deltoro were the only appellees whose complained-of experiences involved the attorney defendants. Ten appellees, including Mr. Guerra and Mr. Deltoro, alleged involvement with adjuster defendants they described as including "and/or NCN."

After the trial court compelled arbitration of Mr. Guerra and Mr. Deltoro's claims against the attorney defendants, thus staying litigation as to those claims, NCN filed a motion to "stay all proceedings with respect to the claims against NCN" pending conclusion of the arbitration. NCN's motion to stay asserted (1) no plaintiffs other than Mr. Guerra and Mr. Deltoro have "a contractual or other relationship with NCN"; (2) "[t]he claims of Plaintiffs Guerra and Deltoro are factually and legally tied to the claims against the Attorney Defendants"; (3) "[t]he arbitrated and litigated disputes against NCN and the Attorney Defendants involve the same facts and the same transactions for roof repairs"; (4) those disputes "are inherently inseparable"; and (5) "the litigation would impact the arbitration."[2] According to NCN, "[t]here would be need for testimony from NCN representatives for the arbitration of claims

---

[2] Specifically, NCN contended:

Plaintiffs allege that the conduct and liability of NCN and the Attorney Defendants is imputed to the other defendants through vicarious liability, making the claims against the Attorney Defendants and NCN intertwined and inseparable. Plaintiffs allege that NCN and the Attorney Defendants "have devised and operated a scheme – conspiracy," indicating that the wrongful acts were conspired by both Attorney Defendants and NCN, collectively. Guerra alleges that he protested expenses taken out of his settlement, which included expenses paid to both the Attorney Defendants and NCN. Plaintiffs allege that the "Defendants, singularly or in combination, made material misrepresentations which were knowingly false with the intent Plaintiffs rely on same." Plaintiffs allege that NCN and the Attorney Defendants, collectively, violated the Texas Government Code. Plaintiffs allege that NCN and the Attorney Defendants breached their fiduciary duties, which included the deduction of expenses and fees from Guerra's settlement, which were part of the Attorney Defendants' case expenses and which included the payment to NCN. Plaintiffs allege that NCN and the Attorney Defendants, collectively, violated the Texas DTPA. Plaintiffs allege that NCN and the Attorney Defendants aided and abetted the breach of fiduciary duties owed to Plaintiffs, including breaches of duties aided by the Attorney Defendants and NCN.

(citations to petition omitted).

–4–

against the Attorney Defendants and testimony from the Attorney Defendants for the claims against NCN before the court," and "[f]actual and legal findings would also have a critical impact on the different claims as well."

In their response, appellees asserted that because NCN "has no right to arbitration" and the attorney defendants have not joined in seeking a stay, NCN "has no standing to seek any stay." Appellees also contended (1) "[t]he arbitration involves claims only against the Attorney Defendants which deal with: overcharging of expenses; fraud in securing any fee agreement with Guerra and Deltoro as well as the Attorney Defendants' performance dealing with same; breach of fiduciary duties where the [Attorney Defendants'] conduct overcharged Guerra and Deltoro, case running, and settling claims without consent; DTPA claims concerning the [Attorney Defendants'] services, fee agreement, failure to disclose and unconscionability; aiding and abetting breaches of fiduciary duties; conspiracy to violate the DTPA, barratry statutes, and to intent to defraud; and barratry"; (2) "[t]hese claims against the [Attorney Defendants] are not inherently inseparable from those against NCN and could be separately brought"; (3) "[w]hether the [Attorney Defendants] committed fraud, breached their fiduciary duties, violated the DTPA, committed barratry, engaged in a conspiracy, or otherwise will not determine whether the Defendants in this litigation can be held legally liable for conversion, fraud, conspiracy, barratry, DTPA violations and/or breach of fiduciary duties"; (4) "[t]he class claims are actually divided between the [Attorney Defendants] and all other

Defendants" and are "not inseparable"; and (5) "[b]ecause neither the same operative facts nor inseparable claims are controlling, the litigation will not critically impact the arbitration proceeding with the [Attorney Defendants]."

Following a hearing,[3] the trial court denied NCN's motion to stay.

**Standard of review and applicable law**

We apply an abuse of discretion standard of review when considering a trial court's ruling on a motion to stay litigation pending the outcome of arbitration. *Star Sys. Int'l Ltd. v. 3M Co.*, No. 05-15-00669-CV, 2016 WL 2970272, at \*4 (Tex. App.—Dallas May 19, 2016, no pet.) (mem. op.) (citing *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 196 (Tex. 2007) (orig. proceeding)); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) (trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules and principles).

The Federal Arbitration Act requires courts to stay litigation of issues that are subject to arbitration. *See* 9 U.S.C. § 3; *Merrill Lynch*, 235 S.W.3d at 195. Although "[a]s a general rule, the mandatory stay applies only to parties to the arbitration agreement," a non-signatory party's claims can be subject to the mandatory stay if the "issues presented in the nonparty-party litigation if litigated would have rendered the arbitration redundant and thwarted the federal policy favoring arbitration." *Zuffa,*

---

[3] The appellate record contains no reporter's record of the hearing.

*LLC v. HDNet MMA 2008 LLC*, 262 S.W.3d 446, 450 (Tex. App.—Dallas 2008, no pet.) (quoting *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001) (per curiam)). An order "refusing a stay of any action under [FAA] section 3" is subject to interlocutory appeal. 9 U.S.C. § 16(a)(1)(A).

When an issue is pending in both arbitration and litigation, arbitration should be given priority to the extent it is likely to resolve issues material to the lawsuit. *Merrill Lynch*, 235 S.W.3d at 195. Courts should "ensure that an issue two parties have agreed to arbitrate is not decided instead in collateral litigation." *Id.* at 196. Issues that are not the subject of arbitration need not be stayed until the arbitration is concluded. *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 500 (Tex. App.—Dallas 2011, pet. denied).

"[T]he fact that nonarbitrable claims against third parties are based on facts related to arbitrable claims does not alone make a stay of those claims necessary." *Diligent Tex. Dedicated LLC v. York*, No. 02-17-00416-CV, 2018 WL 4140637, at *5 (Tex. App.—Fort Worth Aug. 30, 2018, pet. denied) (mem. op.). "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration." *Zuffa*, 262 S.W.3d at 450 (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 343 (5th Cir. 2004)). Factors courts consider include whether (1) the arbitrated and litigated disputes involve the same operative facts, (2) the claims asserted in the arbitration and

–7–

litigation are "inherently inseparable," and (3) the litigation has a "critical impact" on the arbitration. *Id.* (citing *Waste Mgmt.*, 372 F.3d at 343).

**Appellees' jurisdictional challenge is without merit**

As a threshold matter, we begin with appellees' contention on appeal that "NCN, as a non-signatory to the arbitration agreement underlying this appeal, does not effectively have standing to seek a stay." Appellees cite *Waste Management*, in which the Fifth Circuit stated that if a non-signatory's asserted basis for a requested stay of litigation during arbitration under FAA section 3 was not meritorious, the non-signatory lacked "standing" to move for a section 3 stay and could not bring an interlocutory appeal under FAA section 16. *See Waste Mgmt.*, 372 F.3d at 343. More recently, the U.S. Supreme Court stated,

> By [§ 16(a)(1)(A)'s] clear and unambiguous terms, any litigant who asks for a stay under § 3 is entitled to an immediate appeal from denial of that motion—regardless of whether the litigant is in fact eligible for a stay. . . . Jurisdiction over the appeal, however, "must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order[.]"

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627–28 (2009).

Appellees cite no authority, and we have found none, limiting the relationships that can give rise to a non-signatory's standing to seek a litigation stay during arbitration or conditioning a non-signatory's standing to seek such a stay on the signatory showing support. We do not find *Waste Management*'s standing

analysis instructive and we conclude NCN did not lack standing to seek the requested stay.[4] *See id.*

**The trial court did not abuse its discretion by denying NCN's motion to stay**

The parties agree that the FAA applies in this case. The claims subject to arbitration include only Mr. Guerra and Mr. Deltoro's claims against the attorney defendants. NCN contends the trial court abused its discretion by denying the requested stay because "Plaintiffs' claims against NCN are based on the same operative facts and inherently inseparable from Plaintiffs' claims against the Attorney Defendants in arbitration[] and the litigation will have a critical impact on the arbitration." Further, in its appellate reply brief, NCN asserts that although its motion in the trial court requested a stay of "all proceedings" in this case, NCN sought to stay "solely the claims alleged by Plaintiffs Guerra and Deltoro," and not "the entirety of the litigation."[5]

We begin with NCN's argument regarding factor one, whether the arbitrated and litigated disputes involve the same operative facts. *See Zuffa*, 262 S.W.3d at 450 (quoting *Waste Mgmt.*, 372 F.3d at 343). According to NCN, because "Guerra and Deltoro each allege the same claims collectively against all defendants," "the proof

---

[4] NCN's appellate brief states that if this court concludes it lacks jurisdiction over this appeal, "NCN requests that the Court treat this appeal as a petition for mandamus relief." In light of our conclusion above, we need not address NCN's alternative request.

[5] NCN does not argue on appeal that the trial court abused its discretion to the extent it refused to stay litigation of appellees' class claims.

required in the arbitration will be intertwined with the proof required in the litigation." We disagree.

The record shows (1) each appellee relies on a separate, distinct set of underlying facts and there is no single incident or contract common to all appellees, even though the petition describes a pervasive "scam" and alleges the same causes of action against multiple defendants; (2) the petition alleges that the adjuster defendants, including "and/or NCN," made representations to, and imposed individual charges on, each appellee; (3) while the arbitration includes only two appellees and the attorney defendants, the litigation involves all twelve appellees and their experiences with the defendants at various chronological stages of the alleged fraud, including distinctions as to each defendant group's roles and acts; and (4) NCN's motion in the trial court requested a stay of "all proceedings." "[T]he fact that nonarbitrable claims against third parties are based on facts related to arbitrable claims does not alone make a stay of those claims necessary." *Diligent*, 2018 WL 4140637, at *5.

As to factors two and three, NCN further contends the claims are "inherently inseparable" and the litigation will have a critical impact on the arbitration because (1) "the plaintiffs only allege that they suffered one harm: the reduction or loss of their homeowners' insurance proceeds"; (2) "[i]n order to determine whether the Attorney Defendants engaged in a conspiracy with NCN, aided and abetted NCN in breaching a fiduciary duty it allegedly owes to Plaintiffs, or is [sic] vicariously liable

for the actions of NCN, the arbitrator will necessarily review the same operative facts as the jury in the litigation"; and (3) "if the litigation is allowed to proceed, it may resolve some of the same issues to be determined to arbitration." *See Zuffa*, 262 S.W.3d at 450 (quoting *Waste Mgmt.*, 372 F.3d at 343). NCN asserts this case is analogous to *Merrill Lynch*, but we are not persuaded by the comparison. *See* 235 S.W.3d at 185.

In *Merrill Lynch*, an investor and his wife sued a Merrill Lynch, Inc. wealth management employee and two Merrill Lynch-affiliated entities: a life insurance company (ML Life) and a trustee company (ML Trust). The plaintiffs' petition described misrepresentations, omissions, and fiduciary breaches pertaining to an "insurance sale" and "alleged a dozen multifarious claims, all related to [their] insurance trust, and all asserted against the defendants collectively without differentiating the actions of each." *Id.* at 188. The plaintiffs had signed an arbitration agreement only with Merrill Lynch, Inc., which was not named as a defendant. The trial court granted the defendants' motion to compel arbitration as to the claims against the employee, but denied it as to both ML affiliates. *Id.* at 190–91. ML Life and ML Trust then moved to stay the litigation against them pending arbitration. After the trial court denied the stay, the ML affiliates sought mandamus relief. Our supreme court concluded (1) "if the alleged misrepresentations and omissions by [the employee] must be arbitrated, that proceeding must be given priority so that it is not rendered moot by deciding the same issues in court," and

(2) "[a]ssuming the same issues must be decided both in arbitration (against [the employee]) and in court (against the affiliates), we hold the latter must be stayed until the former is completed." *Id.* at 195–96.

Unlike *Merrill Lynch*, this case involves a petition with multiple plaintiffs unrelated by anything but similar harm from a similar scheme; the petition describes multiple transactions, differentiating the defendants' actions. Rather than alleging "one harm," appellees describe damages based on their individual interactions at various stages of their experiences with members of the three defendant groups. *See Matthews v. Priority Energy Servs., LLC*, No. 6:15-cv-448-RWS-KNM, 2016 WL 7633990, at *5 (E.D. Tex. Dec. 2, 2016) ("[B]ecause Plaintiffs are seeking remedies for different violations, the claims are not inherently inseparable."). Likewise, the conspiracy and vicarious liability claims are dependent on each appellee's experience regarding the defendants alleged to have harmed that appellee.

On this record, we cannot conclude the trial court abused its discretion by denying NCN's requested stay. *See Star Sys. Int'l*, 2016 WL 2970272, at *4 (concluding parallel litigation did not "threaten to undermine or moot the arbitration" involving same causes of action against similarly situated defendants); *see also Zuffa*, 262 S.W.3d at 450 ("The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration.").

We decide against NCN on its sole issue and affirm the trial court's order.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

190495F.P05



# JUDGMENT

| | |
|---|---|
| NATIONAL CLAIMS NEGOTIATORS LLC, Appellant<br><br>No. 05-19-00495-CV     V.<br><br>JUAN GUERRA, AMANDA CARDENAS, CESAR QUINONES, FERNANDO MARIN, KEVIN CLAY, BARRY NIX, SANDRA NIX, JUAN DELTORO, GLEN MOORE, GAIL MOORE, ESMERELDA HERNANDEZ, AND FERMIN LOPEZ, Appellees | On Appeal from the 162nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-16-07967. Opinion delivered by Justice Carlyle. Justices Pedersen, III and Reichek participating. |

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Juan Guerra, Amanda Cardenas, Cesar Quinones, Fernando Marin, Kevin Clay, Barry Nix, Sandra Nix, Juan Deltoro, Glen Moore, Gail Moore, Esmerelda Hernandez, and Fermin Lopez recover their costs of this appeal from appellant National Claims Negotiators LLC.

Judgment entered this 31st day of March, 2020.