**Hossain SANEII and Lynn Saneii, Plaintiffs,**

v.

**William T. ROBARDS and Laura Robards, Defendants.**

**No. CIV.A.3:01CV–171–H.**

United States District Court, W.D. Kentucky, at Louisville.

May 24, 2001.

Steven M. Crawford, David S. Kaplan, Frost, Brown & Todd, Louisville, KY, for plaintiffs.

Alice B. Herrington, Anne W. Miller, Woodward, Hobson & Fulton, Louisville, KY, Kenneth L. Sales, Sales, Tillman & Wallbaum, Louisville, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Defendants, William T. and Laura Robards, move to dismiss Plaintiffs' complaint arising out of a real estate contract claiming an arbitration clause contained within the contract requires the parties to arbitrate any and all disputes. The Court finds that under both the Federal Arbitration Act and Kentucky law, where a plaintiff claims fraud in the inducement of a contract containing an arbitration agreement which covers claims of fraud, and where the allegation of fraud is to the contract generally and not the arbitration clause itself, the issue is for an arbitrator to decide. Since a valid arbitration agreement deprives the Court of jurisdiction, the Court concludes that it is appropriate to dismiss this case without prejudice.

The contract at issue concerns the purchase and sale of a home located at 6 Wolf Penn Lane, Prospect, Kentucky (the "Contract"). Plaintiffs claim Defendants fraudulently induced them to enter the Contract by representing the house was a wood frame house with walls in good condition when, in fact, cedar siding concealed log walls in rotten condition. They seek recission of the entire Contract.

■ The Contract contains an arbitration clause which reads:

"**Binding Arbitration:** All claims or disputes, for a sum greater than the limits of small claims court jurisdiction, of Sellers, Buyers, brokers, or agents, or any of them arising out of this contract or the breach thereof or arising out of or relating to the physical condition of the proper[t]y covered by this purchase agreement (*including without limitation, claims of fraud, misrepresentation, warranty and negligence*) shall be decided by binding arbitration in accordance with the rules for the real estate industry, then in effect, unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed . . . (Emphasis added)."

Defendants claim this clause compels arbitration. Plaintiffs respond that their fraudulent inducement claim puts the validity of the whole Contract at issue and, until a court decides the Contract is valid and enforceable, the arbitration clause it contains cannot be enforced.

■ The parties both rely on Kentucky law, apparently agreeing that the resolution of this dispute hinges on whether Kentucky law renders an arbitration clause unenforceable when one of the parties alleges the contract which contains the arbitration clause is invalid. Ordinarily in diversity cases federal courts are bound to follow state rules of decision in matters which are "substantive" rather than "procedural." However, in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court held that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 (West Supp., 2000), applies in federal court diversity cases that implicate interstate

commerce. *See also, Allied–Bruce Terminix Co., Inc. v. Dobson,* 513 U.S. 265, 271, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). *Allied–Bruce* made clear that the FAA reaches to the full limit of Congress' power to regulate interstate commerce. 513 U.S. at 277, 115 S.Ct. 834.

If this contract involves interstate commerce the FAA controls and, under *Prima Paint,* this Court cannot consider a claim of fraud in the inducement where the claim goes not to the arbitration clause itself but to the contract generally. 388 U.S. at 403–04, 87 S.Ct. 1801 (a federal court may consider only a claim of fraud in the inducement of the arbitration clause itself, "the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926, 933 (6th Cir.1998).

Whether this contract involves interstate commerce is a more difficult question. In *United States v. Lopez,* 514 U.S. 549, 583, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court struck down the Gun Free School Zones Act (18 U.S.C. § 922(q) (1994)) because Congress had not established a sufficient connection with interstate commerce. The Court identified three categories of activities that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce." *Id.* at 558–59, 115 S.Ct. 1624 (citation omitted). Where the connection to interstate commerce is based on the third category the regulated activity must "substantially effect" interstate commerce. *Id.* at 559, 115 S.Ct. 1624. However, the Sixth Circuit has recently held that, in the context of a RICO violation (18 U.S.C.

§ 1962), a "de minimis" connection to interstate commerce is sufficient. *United States v. Riddle,* 249 F.3d 529, 537–38 (6th Cir.2001).

In *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), the Court applied its Lopez analysis to the Violence Against Women's Act. *Morrison* suggests four factors that determine whether an activity from *Lopez'* third category has a sufficient connection to interstate commerce: (1) whether the activity is economic in nature, *id.* at 610, 115 S.Ct. 1624; (2) whether Congress has included an express jurisdictional element involving interstate activity which might limit the statute's reach, *id.* at 611, 115 S.Ct. 1624; (3) whether Congress made findings about the effects of the activity on interstate commerce, *id.* at 612, 115 S.Ct. 1624; and (4) the strength of the link between the activity and the effect on interstate commerce *id. See also, United States v. Corp,* 236 F.3d 325, 332–33 (6th Cir.2001).

At least one federal court has considered whether a residential real estate contract is subject to the FAA. *Cecala v. Moore,* 982 F.Supp. 609, 612 (N.D.Ill.1997), held that a contract for the purchase and sale of a house did not involve interstate commerce as defined by the FAA. Some aspects of the Contract do appear to have a tenuous relation to interstate commerce. One of the factors applied in *Lopez* and is the fact that states traditionally possess primary authority for defining and enforcing criminal law. 514 U.S. at 561 n. 3, 115 S.Ct. 1624. Along with criminal law the regulation of residential real estate transactions is an area traditionally regulated by states. On the other hand, *Lopez* also relied on the fact that the Gun Free Schools Act had "nothing to do with commerce or any sort of economic enterprise...." *Id.* The purchase and sale of a

home clearly involves substantial economic activity. Other factors identified in *Morrison* are similarly inconclusive. Congress has not identified specific jurisdictional limits to the FAA. Nor does it seem to have made specific findings on the FAA's effect on interstate commerce.

The parties have not considered whether the FAA applies, and, therefore, have not briefed the issue of the Contract's relation to interstate commerce. While it seems possible that a home sold for over a million dollars would have a substantial connection to interstate commerce, the record is not yet ready for a ruling on this issue.[1]

If the final resolution of this motion hinged on whether the FAA applies it would be proper to remand this issue for discovery and briefing of the interstate commerce issue. However, even if the FAA does not apply this matter will still be resolved by arbitration under Kentucky law.

Kentucky Revised Statute ("KRS") 417.050 provides:

> **Validity of arbitration agreement— exempt agreements.**—A written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract.... (West Supp., 2000).

Plaintiffs argue that an allegation of fraud in the inducement of a contract fits within the savings clause and renders the arbitration agreement unenforceable. No Kentucky court has considered whether KRS 417.050 should be construed in this manner.

Like 34 other states and the District of Columbia, Kentucky has adopted the Uniform Arbitration Act. 7 U.L.A. 1 (1997). The majority of states that have adopted this act have held that while a claim of fraudulent inducement will allow a party to avoid an arbitration clause if the claim goes to the arbitration clause itself, a claim of fraudulent inducement going to the entire agreement should be sent to the arbitrator if the arbitration clause encompasses claims of fraud. *See Cecala v. Moore*, 982 F.Supp. 609, 614 (citing *J & K Cement Constr., Inc. v. Montalbano Builders, Inc.*, 119 Ill.App.3d 663, 667, 75 Ill.Dec. 68, 456 N.E.2d 889 (1983)); *Shaffer v. Jeffery*, 915 P.2d 910 (Okla.1996) (recognizing that majority of states adopt this position but declining to follow the doctrine); *See generally*, Jay M. Zitter, Annotation, *Claim of Fraud in Inducement of Contract as Subject to Compulsory Arbitration Clause Contained in Contract*, 11 A.L.R.4th 774 (Supp.2000). This is also the Supreme Court's interpretation of identical language in the FAA, 9 U.S.C. § 2. *Prima Paint*, 388 U.S. at 403, 87 S.Ct. 1801.

Since the Kentucky Supreme Court has yet to consider this issue this Court must predict how Kentucky courts would decide such a case. *See Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir.1988). KRS

---

1. For example, the Contract appears to be conditioned on Plaintiffs' obtaining a loan for certain specified terms. The Ninth Circuit recognizes that "the highly interconnected nature of the nation's home financing system" supplies a connection to interstate commerce. *Brown v. Investors Mortgage Co.*, 121 F.3d 472, 476 (9th Cir.1997) (citing to Congressional findings that modification of state usury laws was necessary for a stable national financial system: S.Rep. No. 96–368, 1980 U.S.C.C.A.N. at 255). Whether the Plaintiffs did obtain a loan from a bank involved in interstate commerce, and whether this loan was integral to the Contract could be relevant to deciding this issue. Other factors could be whether the negotiations occurred in different states, where the sellers deposited the money from the sale, and whether or to what degree the property is or has been used for interstate commerce.

417.240 states that "this chapter [relating to arbitration] shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." Following the Kentucky Legislature's apparent intent to have KRS 417.050 conform to the interpretation of the majority of states that have enacted to Uniform Arbitration Act, the Court construes KRS 417.050 to require arbitration where a claim of fraud in the inducement goes to the contract generally and where the arbitration clause specifically applies to claims of fraud.

This interpretation is consistent with the national policy favoring the enforcement of privately entered agreements to arbitrate. *See Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926, 938 (6th Cir.1998). An alternative interpretation would significantly diminish the effectiveness of arbitration agreements. A party wishing to avoid arbitration could simply plead fraudulent inducement, thereby removing the case from arbitration until a court determined whether or not the contract was fraudulently induced. The resulting litigation would vitiate the primary benefit of arbitration, the expeditious and inexpensive resolution of disputes, and would effectively emaciate the arbitration statute. *Id.*

The issue of whether Defendants fraudulently induced Plaintiffs to enter the Contract is for an arbitrator to decide. Should the arbitrator decide in Plaintiffs' favor the Contract, and the arbitration clause it contains, could be rescinded. Were this to occur Plaintiffs could sue in this Court on whatever causes of action remained. In that event, Plaintiffs may move to reopen this case.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendants, William T. and Laura Robards, having made a motion to dismiss the complaint of the Plaintiffs, Hossain and Lynn Saneii claiming the parties have entered into a binding arbitration agreement of those matters asserted in the complaint, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that the complaint is DISMISSED WITHOUT PREJUDICE. Either party may move the Court to reopen this case for good cause.