MAZE, JUDGE:
New Meadowview Health and Rehabilitation Center, LLC, d/b/a Meadowview Health and Rehabilitation Center, and affiliated companies (collectively, "Meadowview") appeal from an order of the Jefferson Circuit Court denying its motion to compel arbitration of claims brought by Monica L. Booker, as Administratrix of the Estate of Mona Hardin ("the Estate") and William Hardin. We agree with the trial court that Meadowview failed to carry its burden of proving the existence of a valid and enforceable arbitration agreement. Hence, we affirm, and remand for additional proceedings.
For purposes of this appeal, the following facts are not in dispute. On May 30, 2007, Mona Hardin executed a "Durable Power of Attorney" ("the POA") which designated her husband, William Hardin, as her attorney-in-fact. The POA granted William "full power and authority to do in my name and on my behalf any and all acts I might do if personally present and acting on my own behalf including, but without limiting the generality of forgoing the powers hereinafter set forth."
The specified powers included:
4. To enter into contracts of any kind or description whatsoever, and to exercise any right, option or election which I may have or acquire under any contract;
5. To compromise, settle, or renew any claim against me, or any right which I may be entitled to assert and which may be asserted against me;
6. To assert by litigation or otherwise any claim of mine, and to defend any claim that may be asserted against me with full right to employ counsel and agents which, in the discretion of said attorney in fact, may be necessary in connection therewith;
The POA further provided that "[t]his Durable Power of Attorney shall become effective upon the disability or incapacity of the principal."
On September 11, 2012, Mona was admitted as a resident to Meadowview's facility in Louisville. She died testate on March 19, 2016. Mona's daughter, Monica Booker, qualified as Administratrix of Mona's Estate on June 8, 2016. Shortly thereafter, the Estate brought this action against New Meadowview asserting claims for negligence, medical negligence, corporate negligence, violations of the Long Term Resident's Rights Act,[1] and wrongful death. William asserted a separate claim for loss of consortium.
In response to the complaint, Meadowview filed a motion to compel arbitration. Meadowview alleged that, upon Mona's admission in 2012, William signed a document styled "Alternative Dispute Resolution Agreement" (the Arbitration Agreement), which required arbitration of all *58 claims and waived Mona's rights to a jury trial. However, Meadowview produced only the signature page of the Arbitration Agreement, stating that the rest of the Agreement was not in its file. The signature page includes the following language in capitals, underline and boldface:
F. THE UNDERSIGNED HEREBY ACKNOWLEDGE THAT WE HAVE READ THIS ENTIRE AGREEMENT AND VOLUNTARILY CONSENT TO ALL OF THE TERMS OF THE AGREEMENT. WE FURTHER ACKNOWLEDGE THAT WE HAVE WAIVED OUR RIGHTS TO A TRIAL BEFORE A JUDGE OR JURY BY AGREEING TO BINDING ARBITRATION.
The signature page is not signed by Mona, but it was signed by William as "Family Member."
Meadowview also submitted an affidavit by J. Ben Cress, who is counsel for its parent corporation. Cress stated that the signature page appears to be part of a complete agreement which was used by Meadowview in 2012. Cress attached to his affidavit an unexecuted copy of a four-page document, styled "Alternative Dispute Resolution Agreement." That document includes a signature page in the same format as the page signed by William.
The Estate responded that Meadowview failed to produce the complete Arbitration Agreement. The Estate also argued that Meadowview failed to establish that William had the authority to execute any Arbitration Agreement because there was no showing that Mona was disabled or incapacitated at the time it was purportedly executed. Finally, the Estate argued that the language of the POA did not expressly authorize William to bind Mona to arbitration. The trial court agreed with the Estate on the latter two points and denied Meadowview's motion to compel arbitration.
Meadowview now appeals from the trial court's order denying its motion to compel arbitration. Ordinarily, such orders are interlocutory and are not immediately appealable. However, an order denying a motion to compel arbitration is immediately appealable. KRS 417.220(1). See also Conseco Finance Servicing Corp. v. Wilder , 47 S.W.3d 335, 340 (Ky. App. 2001). The enforcement and effect of an arbitration agreement is governed by the Kentucky Uniform Arbitration Act (KUAA), KRS 417.045 et seq. , and the Federal Arbitration Act, (FAA) 9 U.S.C. 2 §§ 1 et seq. "Both Acts evince a legislative policy favoring arbitration agreements, or at least shielding them from disfavor." Ping v. Beverly Enterprises, Inc. , 376 S.W.3d 581, 588 (Ky. 2012).
But under both Acts, a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. Id. at 589. That question is controlled by state law rules of contract formation. Id. at 590. The FAA does not preempt state law contract principles, including matters concerning the authority of an agent to enter into a contract and which parties may be bound by that contract. Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 630-31, 129 S.Ct. 1896, 1902, 173 L.Ed. 2d 832 (2009). Since this matter is entirely an issue of law, our standard of review is de novo. Conseco , 47 S.W.3d at 340.
Meadowview has the initial burden of establishing the existence of a valid and enforceable agreement. Dutschke v. Jim Russell Realtors, Inc. , 281 S.W.3d 817, 824 (Ky. App. 2008). Upon presenting prima *59 facie evidence thereof of a valid agreement, the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement. Id. Here, Meadowview produced only an executed partial copy of the original agreement and is attempting to establish the rest of the agreement by extrinsic evidence.
However, Cress's affidavit states only that he believes the signature page "to be part of the same ADR Agreement" that was used by Meadowview at the time of Mona Hardin's admission in 2012. Cress had no knowledge whether the complete arbitration agreement was provided to Mona or to William, stating only that the Arbitration Agreement was offered to each new resident as part of the admissions process. Mere evidence of a common habit or practice of presenting arbitration agreements for signature is not evidence that the nursing home presented a complete arbitration agreement for signature on a particular occasion. Mt. Holly Nursing Home v. Crowdus , 281 S.W.3d 809, 814 (Ky. App. 2008).
Furthermore, even if the signature page and Cress's affidavit were sufficient to establish that the complete Arbitration Agreement was executed at the time of Mona's admission, Meadowview still failed to establish that William was authorized to execute it on Mona's behalf. As the trial court noted, the POA unambiguously states that it would become effective upon Mona Hardin's disability or incapacity. In such cases, KRS 386.093(5) provides:
If the power of attorney is to become effective upon the disability or incapacity of the principal, the principal may specify the conditions under which the power is to become effective and may designate the person, persons, or institution responsible for making the determination of disability or incapacity. If the principal fails to so specify, the power shall become effective upon a written determination by two (2) physicians that the principal is unable, by reason of physical or mental disability, to prudently manage or care for the principal's person or property, which written determination shall be conclusive proof of the attorney in fact's power to act pursuant to the power of attorney. The two (2) physicians making the determination shall be licensed to practice medicine.
Meadowview presented medical records showing that Mona had numerous physical ailments, including a level of cognitive impairment. However, the records make no reference to Mona being unable to answer questions or suggest that she was mentally disabled. Under the circumstances, we agree with the trial court that this evidence is insufficient to meet the statutory standard to invoke the POA.
Lastly, Meadowview contends that it reasonably relied upon William's apparent authority to execute the Arbitration Agreement. "An agent is said to have apparent authority to enter transactions on his ... principal's behalf with a third party when the principal has manifested to the third party that the agent is so authorized, and the third party reasonably relies on that manifestation." Ping , 376 S.W.3d at 594. "The principal will then be bound by such a transaction even if the agent was not actually authorized to enter it." Id. See also Mill Street Church of Christ v. Hogan , 785 S.W.2d 263 (Ky. App. 1990) ; Restatement (Second) of Agency § 27 (1958) ; and Restatement (Third) of Agency § 2.03 (2006).
Meadowview did not offer any evidence that Mona represented that William was signing the Arbitration Agreement on her behalf, or that William represented that he had such authority. Given the express language providing that the POA would become *60 effective upon Mona's incapacity or disability, it was incumbent upon Meadowview to establish that it reasonably believed the POA was in effect. Here, William signed the purported Arbitration Agreement only as a "Family Member" of Mona, with no indication that he was acting as her attorney-in-fact. And finally, William's apparent authority to execute Mona's admission documents does not extend to collateral agreements, such as the Arbitration Agreement at issue in this case. Ping , 376 S.W.3d at 594.
In conclusion, Meadowview failed to meet its burden of establishing the existence of a valid and enforceable arbitration agreement. The partial agreement and extrinsic evidence presented by Meadowview was insufficient to establish a complete contract. Furthermore, Meadowview failed to establish that William Hardin was authorized to execute the Arbitration Agreement on Mona's behalf. Therefore, the trial court properly denied Meadowview's motion to compel arbitration.
Accordingly, we affirm the order of the Jefferson Circuit Court denying Meadowview's motion to compel arbitration, and we remand for additional proceedings on the merits of the claims brought by the Estate and William Hardin.
ALL CONCUR.

Kentucky Revised Statutes (KRS) 216.510 et seq.