RENDERED: JULY 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0313-MR

KENTUCKY NEUROMETABOLIC
CENTER, PLLC D/B/A THE
NEUROMETABOLIC INSTITUTE
AND LARRY ANTHONY SEARS,
D.C.                                                                    APPELLANTS


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                      HONORABLE BRIAN C. EDWARDS, JUDGE
                        ACTION NO. 19-CI-007846


PHILLIP WAYNE LEIGH, SR.                                                  APPELLEE


                                OPINION
                               AFFIRMING

                            ** ** ** ** **

BEFORE: ACREE, DIXON, AND K. THOMPSON, JUDGES.

ACREE, JUDGE: Appellants, Kentucky Neurometabolic Center, PLLC d/b/a The

Neurometabolic Institute and Larry Anthony Sears, D.C., appeal the Jefferson

Circuit Court's February 23, 2021 order denying Appellants' motion to compel

arbitration between Appellants and Appellee, Phillip W. Leigh, Sr. Finding no error, we affirm.

## BACKGROUND

Mr. Leigh received laser therapy treatment from Dr. Sears at The Neurometabolic Institute on multiple occasions between March 12, 2019, and May 2, 2019. Mr. Leigh alleges he suffered multiple burns and open wounds resulting from negligent medical care he received from Dr. Sears. In anticipation of a lawsuit, Mr. Leigh requested a complete, electronic copy of Appellants' records pertaining to him and his treatment. The request advised Appellants they were "not [to] abstract or remove any portions of any chart, record, or file."

Appellants produced a purportedly complete copy of these records to Mr. Leigh in response to the request. Appellants' response totaled thirty (30) pages of material. The second page of the production was a one-page document Mr. Leigh had signed. The document does not contain an arbitration clause or any reference to arbitration.

Mr. Leigh subsequently initiated legal action. Appellants' Answer averred that the parties agreed to resolve disputes through arbitration and that the agreement could be found in a four-page document entitled "Agreement for Wellness Services." They appended an unsigned copy of the four-page document to their Answer.

The second page of the document, at paragraph 8, includes an arbitration clause that reads as follows: "For all other complaints, disagreements, and grievances, Parties agree to use their best efforts to resolve their dispute privately and if that fails, the sole recourse shall be resolution through arbitration, and the decision pursuant to arbitration shall be final and binding."

In an affidavit, Mr. Leigh swore he was only given a single page to sign at his first appointment, and that he believed the single page constituted the entire agreement between the parties. Mr. Leigh claimed the first time he knew of the existence of the other three pages of the agreement – and therefore became aware of the arbitration provision – was when Appellants included an unsigned copy of the agreement with their Answer.

In his own affidavit, Dr. Sears stated Appellants' ordinary practice is to provide the entire agreement for a new patient to review, and that signing the agreement is a precondition to treatment. He also stated Appellants only retain signature pages because the entire document is the same for each patient.

Appellants moved to compel arbitration, and the circuit court denied the motion. This appeal followed.

## STANDARD OF REVIEW

When an appellate court reviews the denial of a motion to compel arbitration, "[t]he trial court's factual findings, if any, are reviewed for clear error,

but its construction of the contract, a purely legal determination, is reviewed *de novo.*" *North Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010) (citing *Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543 (Ky. 2008)). "When reviewing a trial court's findings under the clear error standard, the appellant court must determine 'whether or not those findings are supported by substantial evidence.'" *CertainTeed Corp. v. Dexter*, 330 S.W.3d 64, 72 (Ky. 2010) (quoting *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *Am. Rolling Mill Co. v. Pack*, 278 Ky. 175, 182, 128 S.W.2d 187, 190 (1939). Rather, "'[substantial evidence] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)).

## ANALYSIS

Appellants argue the circuit court erred in denying their motion to compel arbitration and, therefore, the Agreements' arbitration provision deprives the circuit court of jurisdiction over this matter. We do not agree.

The circuit court made several relevant findings of fact. It found the signature page of the version of the Agreement Appellants included with their Answer did not match the single-page document Mr. Leigh had signed, and

Appellants offered no other proof that Mr. Leigh had an opportunity to review and consent to the entire Agreement. Therefore, the circuit court determined Appellants did not satisfy their burden of proving Mr. Leigh had consented to arbitration.

Because substantial evidence supports each of these findings, we are bound by them. What remains of our review is to apply the law to these facts *de novo*. *North Fork Collieries*, 322 S.W.3d at 102.

Unlike most interlocutory orders, an order denying a motion to compel arbitration under the KUAA[1] is immediately appealable. KRS[2] 417.220(1)(a). Both the KUAA and the FAA[3] govern arbitration agreements. *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 588 (Ky. 2012). However, the FAA does not preempt state contract law, including questions regarding the elements of a binding agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009). Thus, we apply Kentucky jurisprudence regarding the making of contracts to determine if a party has assented and, thus, can be compelled to arbitrate.

---

[1] Kentucky Uniform Arbitration Act, KRS Chapter 417.

[2] Kentucky Revised Statutes.

[3] Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

Under both the KUAA and the FAA, "a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *New Meadowview Health & Rehab. Ctr., LLC v. Booker*, 550 S.W.3d 56, 58 (Ky. App. 2018) (citing *Ping*, 376 S.W.3d at 589). "[A] written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001). "Mere evidence of a common habit or practice of presenting arbitration agreements for signature" does not suffice as proof it was presented to a specific party on a specific occasion. *New Meadowview*, 550 S.W.3d at 59 (citing *Mt. Holly Nursing Home v. Crowdus*, 281 S.W.3d 809, 814 (Ky. App. 2008)).

Appellants argue they proved Mr. Leigh's agreement to arbitrate by evidence of his signature, in combination with (a) Dr. Sears's affidavit that it is Appellants' ordinary practice to provide the entire agreement to patients to review prior to signing, and (b) an unsigned exemplar of their standard services agreement which contains an arbitration provision. This is insufficient.

For an enforceable contract to exist, "*there must, of course, be a mutual assent by the parties – a meeting of minds – and also an intentional manifestation of such assent.*" *Furtula v. University of Kentucky*, 438 S.W.3d 303, 308 (Ky. 2014) (emphasis original). Appellants' evidence of their common

-6-

practice tells us what was in their (or their agent's) mind when Mr. Leigh signed but says nothing about what was in his. Their evidence fails to establish or even suggest Mr. Leigh was aware of the Appellants' common practice. Their evidence fails to show he had been presented with the pages containing the arbitration clause.

Ironically, the page Mr. Leigh acknowledges signing in person describes how assent – a meeting of the minds – could be proved if execution had occurred electronically. (Record (R.) 36). Referencing Mr. Leigh as the "Client," it says Appellants or their agent could "caus[e] an email to be sent automatically to Client and Practitioner with copies of the completed Agreement and above-referenced Practice Disclosure, and . . . by Client . . . *acknowledging receipt of the completed Agreement and Practice Disclosure* and the Client's acceptance of the terms thereof." (*Id.* (emphasis added)). Such email exchanges could be convincing evidence of assent. If Appellants have a similar business practice of patient/client acknowledgment when an agreement is signed in person, they presented no proof that they followed it in this case.

In *New Meadowview*, we affirmed the Jefferson Circuit Court's denial of a motion to compel arbitration, holding a party seeking to enforce an arbitration agreement was unable to prove a "valid and enforceable arbitration agreement" existed. *New Meadowview*, 550 S.W.3d at 60. In *New Meadowview*, the

appellants were only able to produce a signed signature page of an "alternative dispute resolution agreement" and stated the remaining pages of the document were not in their records. *Id*. at 57-58. The signature page contained the statement that "the undersigned hereby acknowledge that we have read this entire agreement and voluntarily consent to all of the terms of the agreement . . . [w]e further acknowledge that we have waived our rights to a trial before a judge or jury by agreeing to binding arbitration." *Id*. at 58 (capitalization removed).

A representative of the appellant's parent corporation submitted an affidavit wherein he stated the signature page appeared to be the final page of appellant's standard alternative dispute resolution agreement, an unexecuted copy of which accompanied his affidavit. *Id*. The unexecuted document's signature page appeared to be identical to the executed signature page. *Id*. Nevertheless, this Court concluded the appellant "failed to meet its burden of establishing the existence of a valid and enforceable arbitration agreement" because "[t]he partial agreement and extrinsic evidence presented by [appellant] was insufficient to establish a complete contract." *Id*. at 60.

The similarities this case and *New Meadowview* share are more than remarkable; the slight differences provide greater confidence in the Court's holding than in *New Meadowview* itself. In both, the parties seeking to enforce an arbitration agreement could only produce a signed signature page as evidence of an

agreement to arbitrate disputes, and in both the appellants stated their practice to only retain signature pages. In both, an affiant explained that requiring agreement to arbitration was standard business practice. And in both, the appellant seeking to enforce arbitration offered an unexecuted standardized form of the purported agreement as further evidence of that business practice.

However, the signature page in *New Meadowview* contained explicit reference to arbitration, 550 S.W.3d at 58, but the page Mr. Leigh signed clearly does not. The signed signature page in *New Meadowview* was the same as the signature page in the unexecuted copy of the arbitration agreement, *id.*, but the blanks on the signature page Mr. Leigh signed were completed differently than on the copy Appellants attached to their Answer.

And, while the document at issue in *New Meadowview* was devoted entirely to arbitration, *id.* at 57-58, the document Appellants seek to enforce is a broad "Agreement for Wellness Services" that so happens to contain an arbitration clause on a second page Appellants could not prove Mr. Leigh ever saw, even after sending him thirty pages of documentation upon his request. For these reasons, this case is a better one than *New Meadowview* to illustrate that an arbitration agreement will not be enforced in the absence of proof of all the elements of contract formation, including mutual assent.

## CONCLUSION

Based on the foregoing, we affirm the Jefferson Circuit Court's order denying Appellants' motion to compel arbitration.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Benjamin J. Weigel
Louisville, Kentucky

BRIEF FOR APPELLEE:

Nicholas Craddock
Louisville, Kentucky