RENDERED:  SEPTEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1415-MR

PARKPLACE HOMES, LLC AND
AMIE HACKER                                                            APPELLANTS

v.
APPEAL FROM PERRY CIRCUIT COURT
HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 21-CI-00096

CANDICE GAYHART; CHAMPION
HOME BUILDERS, INC.; AND
EDWARD GAYHART                                                       APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND GOODWINE, JUDGES.

GOODWINE, JUDGE:  Parkplace Homes, LLC and Amie Hacker (collectively

"Parkplace") appeal the Perry Circuit Court order denying their motion to dismiss

and compel arbitration.  After careful review, we reverse and remand with

instructions to enter an order compelling arbitration.

# BACKGROUND

On March 16, 2019, Candice and Edward Gayhart[1] ("Gayhart") contracted with Parkplace to purchase a 2019 Champion double-wide mobile home. Gayhart executed a series of purchase documents memorializing the terms of the sale. The contract contains a document titled "Arbitration Agreement," in which she agreed to arbitrate all disputes arising from the home's purchase agreement, Record (R.) at 22. Gayhart signed and dated the arbitration agreement; a notary attested her signature.

The arbitration agreement provides a detailed explanation of the dispute resolution process. First, it states that Gayhart's agreement to arbitrate would be incorporated into the totality of the purchasing documents executed for the purchase and delivery of the mobile home:

> Buyer(s) and Seller/Assignee, their successors and assigns, hereby agree that this Arbitration Addendum shall become part of and applicable to all manufactured home purchase documents, including but not limited to the purchase agreement contract and/or mortgage and/or promissory note (collectively "loan" hereafter).

R. at 22.

---

[1] Edward Gayhart passed away in January of 2022, after the Complaint was filed but before Parkplace was served. Candice did not join Edward's estate and continued prosecuting the lawsuit individually. Though they both executed the arbitration agreement and jointly filed suit, we reference Candice (Gayhart) singularly for clarity.

Second, the arbitration agreement stipulates three specific agreements made by Gayhart in bold-faced type:

> **(1) That this purchase involves interstate commerce;**
> **(2) that arbitration is a less expensive method of dispute resolution that decreases servicing costs of this purchase, ensuring to the benefit of buyer(s); and (3) to resolve via binding arbitration all disputes, claims, or other matters in question arising out of or relating to this purchase, its interpretation, validity, performance or the breach thereof.  Subject to the express exceptions listed below, the scope of arbitrability is broad and includes, without limitation, contractual, tort, statutory and caseless claims**.

*Id.*

Third, the arbitration agreement defines applicable procedures and laws:

> Arbitration shall be by three arbitrators and shall be governed by the Federal Arbitration Act, 9 U.S.C.[2] Sec. 1 [et] seq.
>
> The arbitrators shall have full power to award all legal and equitable [relief] including, but not limited to, monetary damages, declaratory, and injunctive relief.  Judgement upon the arbitration award may be entered in any court having jurisdiction.

*Id.*

---

[2] United States Code.

Finally, Gayhart signed and attested that she "read these terms and agree to these terms and conditions of the Contract and its arbitration addendum." *Id.*

On April 8, 2021, Gayhart filed a complaint in the Perry Circuit Court against Parkplace, the retail seller of the home; Hacker, Parkplace's owner and president; and Champion Builders, Inc. ("Champion"), the home's manufacturer. The complaint asserts various tort and contractual claims arising from purchasing the mobile home, including defects in the mobile home Gayhart was unaware of before purchasing it and fraudulent inducement to purchase the home.

Gayhart served Parkplace on July 18, 2022. In the interim, she did not conduct any discovery, take any depositions, file motions, or take steps to prosecute her claim.

On August 8, 2022, Parkplace moved to dismiss Gayhart's claims against it based on the arbitration agreement. Champion also moved to dismiss based on its separate arbitration agreement with Gayhart. Champion withdrew its motion on October 27, 2022. Though not stated in the record, Parkplace believes Gayhart's claims against Champion were settled entirely, and she is no longer prosecuting those claims.

Gayhart opposed Parkplace's motion arguing, "the Arbitration Agreement could not be enforced as to the co-defendant Champion since

Champion is not a party therefore obviating any possibility of apportionment of fault by any Arbitrator between the co-defendant and the fact the Plaintiff has alleged fraud in the inducement which has the effect of negating the entire contract the defendant park place [sic] cannot meet its burden to compel arbitration." R. at 38.

In reply, Parkplace argued that Gayhart does not dispute that she signed the arbitration agreement or that the arbitration agreement covers her claims. Parkplace argued that the agreement was binding and arbitration was required.

On October 28, 2022, the circuit court heard arguments on Parkplace's motion. At the end of the hearing, the circuit court orally ruled that it would deny the motion without providing any explanation.[3] On October 31, 2022, the circuit court entered a one-sentence order stating, "IT IS HEREBY ORDERED that the Motion to Dismiss and Compel Arbitration be, and the same hereby is overruled." R. at 119. The circuit court failed to include any written findings of fact or conclusions of law in its order. This appeal followed.

On appeal, Parkplace argues: (1) the Federal Arbitration Act applies to this transaction; (2) it established the existence of a binding arbitration

---

[3] A video recording of the hearing on the motion to compel, if any, was not included in the record on appeal. Thus, this Court does not know whether the circuit court issued oral findings. Neither party has referenced any such findings.

agreement that applies to Gayhart's complaint; (3) the arbitration provision applies

to all claims in the complaint; (4) Gayhart failed to provide any viable presumption

to rebut the presumption of arbitrability.

## STANDARD OF REVIEW

Though interlocutory orders are generally not appealable, "an order

denying a motion to compel arbitration is immediately appealable." *New*

*Meadowview Health and Rehabilitation Center, LLC v. Booker*, 550 S.W.3d 56, 58

(Ky. App. 2018) (citing KRS[4] 417.220(1)).  We apply the following standard in

reviewing a denial of a motion to dismiss and compel arbitration:

> The enforcement and effect of an arbitration agreement is governed by the Kentucky Uniform Arbitration Act (KUAA), KRS 417.045 *et seq.*, and the Federal Arbitration Act, (FAA) 9 U.S.C. §§ 1 *et seq.*  "Both Acts evince a legislative policy favoring arbitration agreements, or at least shielding them from disfavor." *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 588 (Ky. 2012).
>
> But under both Acts, a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate. *Id.* at 589. That question is controlled by state law rules of contract formation. *Id.* at 590.  The FAA does not preempt state law contract principles, including matters concerning the authority of an agent to enter into a contract and which parties may be bound by that contract. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31, 129 S. Ct. 1896, 1902, 173 L. Ed. 2d 832 (2009).  Since this matter is entirely an issue of law, our standard of review is *de*

---

[4] Kentucky Revised Statute.

> novel. [*Conseco Financing Servicing Corp. v. Wilder*, 47
> S.W.3d 335, 340 (Ky. App. 2011).]

*Id.* (footnote omitted).

## ANALYSIS

"Arbitration agreements, as with any other valid contract, are generally enforceable. State courts must compel arbitration when there is a valid, written arbitration agreement between the parties." *Jackson v. Legacy Health Services, Inc.*, 640 S.W.3d 728, 732 (Ky. 2022) (citing 9 U.S.C. § 2). Under both the Kentucky Uniform Arbitration Act[5] (KUAA) and the Federal Arbitration Act[6] (FAA), "a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *New Meadowview Health and Rehabilitation Center, LLC*, 550 S.W.3d at 58 (citing KRS 417.220(1)).

"[T]he existence of a binding agreement to arbitrate is necessarily a threshold consideration for a trial court faced with a motion to compel arbitration. Disposition of that issue, as both the United States Supreme Court and [the Kentucky Supreme Court] have long recognized, implicates state law contract principles." *Jackson*, 640 S.W.3d at 732 (citations omitted).

---

[5] KRS 417.045 *et seq.*

[6] 9 U.S.C. §§ 1-402.

Nothing in the FAA modifies the basic principles of state contract law regarding the scope of agreements and who is bound by them. *Golden Gate Nat'l Senior Care, LLC v. Rucker*, 588 S.W.3d 868, 870 (Ky. App. 2019) (citations omitted). Therefore, "[o]rdinary contract principles govern the validity of an arbitration agreement." *GGNSC Stanford, LLC v. Rowe*, 388 S.W.3d 117, 121 (Ky. App. 2012). Moreover, arbitration agreements "constitute a waiver of the right to a trial by jury, which is a fundamental right." *Jackson*, 640 S.W. 3d at 735 (citations omitted); *see also* KY. CONST. § 7. Here, the circuit court denied Parkplace's motion to compel without issuing written findings of fact or conclusions of law.

We now review *de novo* the circuit court's decision to deny the motion to compel. First, Parkplace argues, the FAA applies to this transaction. We agree. The FAA applies to any arbitration agreement executed in connection with a transaction involving interstate commerce. *See* 9 U.S.C. § 2 (FAA applies to a "contract evidencing a transaction involving commerce"). This transaction involved interstate commerce. Gayhart, a Kentucky resident, purchased a home manufactured by Champion Homes, a Michigan corporation, and delivered it to Kentucky using components, parts, and labor from multiple other states. As stated above, the KUAA, FAA, and state law contract principles apply in determining the enforceability of an arbitration agreement.

Second, Parkplace argues that it established the existence of a binding arbitration agreement that applies to the claims in the complaint. We agree.

In ruling on a motion to compel arbitration, a circuit court must first determine whether the "party seeking to compel arbitration has [met] the initial burden of establishing the existence of a valid agreement to arbitrate." *Ping*, 376 S.W.3d at 590. Then, "the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement." *Dutschke v. Jim Russell Realtors, Inc.*, 281 S.W.3d 817, 824 (Ky. App. 2008).

In assessing the validity of the arbitration agreement, the circuit court's role is not "to weigh the equities of the situation, to assess the merits of the underlying controversy, or to determine whether litigation would or would not 'irreparably harm' the movant" or conversely harm the party opposing the motion. *North Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010). Instead, the circuit court's task is "simply to decide under ordinary contract law whether the asserted arbitration agreement actually exists between the parties and, if so, whether it applies to the claim raised in the complaint. . . . If an arbitration agreement is applicable, the motion to compel arbitration should be granted." *Id.* (citations omitted). The circuit court "may deem arbitration agreements invalid due to 'generally applicable contract defenses,' but not because of 'defenses that apply only to arbitration or that derive their meaning from the fact that an

-9-

agreement to arbitrate is at issue.'" *Jackson*, 640 S.W.3d at 732 (citation omitted).

Here, Parkplace met its burden of establishing a valid agreement to arbitrate. In Kentucky, to form a valid and enforceable agreement, "there must be voluntary and complete assent by parties having the capacity to contract." *Cambridge Place Group, LLC v. Mundy*, 617 S.W.3d 838, 840 (Ky. App. 2021) (citation omitted). Gayhart does not dispute that Parkplace met its initial burden of establishing the existence of a valid agreement. Gayhart signed the arbitration agreement at issue. She does not deny that she read the agreement before signing it, nor has she raised any defense for its validity. She does not dispute that she read and was aware of the arbitration agreement. Instead, she argues that the mobile home was delivered late and in poor condition. She claims that Parkplace misrepresented the condition of the mobile home and delayed installation and setup. Finally, she argues that Parkplace refused to fix the alleged defects, and the agreement should not bind her. We disagree that the agreement should not bind her.

Third, Parkplace argues that the arbitration agreement applies to all claims asserted in the complaint. Parkplace notes that the circuit court should have addressed this issue. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a

like defense to arbitrability." *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 855 (Ky. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)).  We find that the issues raised in the complaint fall within the scope of the arbitration agreement.

Finally, Parkplace argues that Gayhart failed to provide any viable argument to rebut the presumption of arbitrability.  Specifically, Parkplace argues that Gayhart's fraud in the inducement claim does not foreclose arbitration.  Gayhart claims the arbitration agreement is invalid because Parkplace fraudulently induced her to agree.  However, her contention is contrary to Kentucky and federal case law.  The Supreme Court of Kentucky has held:

> While obviously, it is good public policy to disfavor fraud, requiring parties to arbitrate such claims (if in fact the arbitration agreement contemplates doing so, *i.e.*, the clause itself is broad enough in scope to encompass claims such as fraudulent inducement) does not in any way endorse a policy that is lax on fraud.
>
> . . . .
>
> To read KRS 417.050 as requiring that any allegation made with regards to the contract as a whole that would be grounds for the "revocation of any contract" as lying outside the scope of arbitration, would be in effect to render the arbitration statutes meaningless.  In fact, any party seeking to avoid the agreement to arbitrate could simply plead fraudulent inducement in the underlying contract (rather than perhaps a more appropriate action such as breach of warranty) in order to ensure that a court and not an arbitrator heard its claim.  [*Saneii v. Roberts*, 187 F. Supp. 2d 710, 714 (W.D. Ky. 2001).]  "The

resulting litigation would vitiate the primary benefit of arbitration, the expeditious and inexpensive resolution of disputes, and would effectively eviscerate the arbitration statute." *Id.*

*Louisville Peterbilt, Inc.*, 132 S.W.3d at 855-56. No evidence in the record supports Gayhart's claim that she was fraudulently induced to sign the arbitration agreement. However, even if there was, that evidence can and should be presented to the arbitrator.

Additionally, Parkplace argues that the arbitration agreement is valid and enforceable, notwithstanding Gayhart's separate claims against Champion. Though Gayhart argues that apportionment issues render the arbitration agreement unenforceable, case law does not support their argument. "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 20, 103 S. Ct. at 939. "The Act has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19, 132 S. Ct. 23, 24, 181 L. Ed. 323 (2011) (citation omitted).

## CONCLUSION

For the foregoing reasons, we reverse the order of the Perry Circuit Court denying Parkplace's motion to dismiss and compel arbitration and remand with instructions to enter an order compelling arbitration.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Gregory T. Dutton
Samuel W. Wardle
Louisville, Kentucky

BRIEF FOR APPELLEE CANDICE GAYHART:

John Hansen
Hazard, Kentucky