**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1523-23

AMBER JONES, on behalf
of herself and those
similarly situated,

     Plaintiff-Appellant,

v.

MACKLOCK NATIONAL
CREDIT, LLC,

     Defendant,

and

EPPS, LLC a/k/a ELECTRONIC
PAYMENT PROCESS SYSTEMS,
LLC,

     Defendant-Respondent.

---

Argued October 9, 2024 – Decided July 30, 2025

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-0285-23.

Mark Jensen argued the cause for appellant (Kim Law Firm, LLC, attorneys; Mark Jensen and Yongmoon Kim, on the briefs).

Vincent van Laar argued the cause for respondent (Bochetto & Lentz, PC, attorneys; Bryan R. Lentz, on the brief).

PER CURIAM

Plaintiff Amber Jones appeals from the December 12, 2023 Law Division order granting defendant EPPS, LLC a/k/a Electronic Payment Process Systems, LLC's (EPPS) motion to compel arbitration under a contract to which it was not a signatory and dismissing the complaint against it with prejudice. We reverse and remand for further proceedings.

I.

On January 18, 2017, plaintiff signed a client services agreement (Agreement) with defendant Macklock National Credit, LLC (Macklock). In exchange for a monthly fee, Macklock agreed to provide plaintiff with credit monitoring, credit repair, and account dispute services to assist her in consolidating and negotiating resolution of her outstanding debts. The Agreement defined "Client" as plaintiff and provided, "Macklock . . . and Client shall be referred to jointly as the 'Parties.'"

The Agreement contained an arbitration provision and waiver of the right to bring or participate in a class action. That provision applied to "any controversy, claim or dispute between the Parties . . . arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, conscionability or validity thereof, including any determination of the scope or applicability of this Agreement to arbitrate . . . ."

The Agreement required plaintiff, as consideration for the services provided by Macklock, to make monthly payments to "a third party custodian" identified in the Agreement as EPPS. The Agreement provided EPPS would withdraw funds from plaintiff's bank account each month and hold the funds in escrow "to be released to Macklock . . . upon the Completion of the Services." The monthly payments included a monthly fee retained by EPPS. The Agreement provided: "This confirms Client's understanding and agreement that the terms of any agreement between Client and EPPS . . . are separate from this Agreement . . . ." (emphasis omitted). At the time she executed the Agreement, plaintiff signed an electronic funds transfer authorization (EFTA) permitting EPPS to remove the monthly payments from her bank account. The EFTA did not include an arbitration provision.

3

On January 18, 2023, one day after filing her original complaint, plaintiff filed an amended class action complaint in the Law Division on behalf of herself and similarly situated persons against Macklock and EPPS.[1] Plaintiff alleged as of May 2018, she made $7,585 in payments and received no benefits or services from Macklock or EPPS.

Plaintiff alleged defendants: (1) provided debt adjustment services without having first obtained the prerequisite debt adjuster licenses required by the New Jersey Debt Adjustment and Credit Counseling Act (DACCA), N.J.S.A. 17:16G-1 to -9; (2) engaged in fraudulent and unlawful business practices prohibited by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -210; (3) engaged in the unauthorized practice of law; (4) violated the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1 to -6.2; (5) violated the Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -18; (6) collected fees in excess of those authorized by DACCA; and (7) were unjustly enriched. Plaintiff sought a judgment declaring the Agreement void and unenforceable, restitution, disgorgement, damages, injunctive relief, and attorney's fees.

---

[1] Plaintiff's original complaint was identical to her amended complaint, except it named only Macklock as a defendant.

4

On April 20, 2023, EPPS moved to dismiss the complaint pursuant to Rule 4:6-2(b) and (e). EPPS argued it was not subject to personal jurisdiction in New Jersey because it had either no contacts with the State or insufficient minimum contacts to warrant the exercise of jurisdiction. In addition, EPPS argued if it was subject to jurisdiction in New Jersey, then the amended complaint should be dismissed because plaintiff failed to allege valid causes of action against it. EPPS did not argue plaintiff should be compelled to submit her claims to arbitration pursuant to the Agreement.[2]

On June 9, 2023, the court issued an oral decision denying EPPS's motion without prejudice. The court found the exercise of jurisdiction over EPPS in New Jersey would not offend due process because EPPS purposely availed itself of the privilege of conducting business in New Jersey by contacting Jones, a New Jersey resident, to execute the EFTA. In addition, the court found plaintiff pled valid causes of action against EPPS. A June 9, 2023 order memorialized the motion court's decision.

On June 23, 2023, EPPS filed an Answer. It asserted twenty-two separate defenses, but did not assert the arbitration provision of the Agreement as an

---

[2] During oral argument on the motion, EPPS's counsel informed the court that should the motion be denied, EPPS intended to move to compel plaintiff to submit her claims to arbitration.

affirmative defense. EPPS, however, reserved the right to assert additional affirmative defenses.

Macklock did not file an answer or otherwise respond to the amended complaint. Although there is no evidence in the record with respect to Macklock's status, counsel and the court mentioned Macklock filed for bankruptcy and possibly was defunct. The record contains no evidence suggesting the claims against Macklock are subject to a stay under the Bankruptcy Code. See 11 U.S.C.A. § 362.

On September 1, 2023, EPPS moved to dismiss the amended complaint pursuant to Rule 4:6-2(a) and to compel plaintiff to submit her claims to arbitration pursuant to the Agreement. EPPS's brief was not accompanied by a notice of motion or proof of service.

EPPS argued plaintiff's claims against it arise from the Agreement and therefore, were subject to its arbitration provision. Although acknowledging it was not a party to the Agreement, EPPS argued plaintiff's claims against it were intertwined with her claims against Macklock, which were subject to the arbitration provision. Thus, EPPS argued it was entitled to invoke the arbitration provision under the doctrine of equitable estoppel and traditional agency principles to provide a single forum for resolution of plaintiff's claims.

6

Plaintiff opposed the motion, arguing EPPS was not a party to the Agreement, could not invoke the arbitration provision, and was not entitled to relief under the doctrine of equitable estoppel or traditional agency principles. Finally, plaintiff argued EPPS waived its right to compel arbitration by failing to move for such relief sooner. Although plaintiff's opposition brief did not argue EPPS's motion should be denied because of its procedural deficiencies, her counsel raised that point at oral argument on the motion.

On December 12, 2023, the court issued a written decision granting the motion. The court found "although [d]efendant EPPS was a non-signatory to the contract between [p]laintiff and [d]efendant Macklock, the broad arbitration provision within the contract between the parties binds [p]laintiff to resolving her dispute with [d]efendant EPPS by arbitration."

In addition, the court found EPPS was an indispensable party to the dispute between plaintiff and Macklock. The court observed "[i]t is clear . . . the claims in this action cannot be severed from those against [d]efendant [Macklock] . . . ." The court reasoned that because the arbitration provision applied to plaintiff's claims against Macklock, arbitration was the only forum in which all parties could proceed in a single action to resolve plaintiff's claims.

7

Lastly, the court found plaintiff was estopped from avoiding arbitration of her claims against EPPS. The court found "a non-signatory to an arbitration agreement may compel a signatory to arbitrate when issues to be litigated are intertwined with the agreement containing the arbitration" clause. The court concluded "[i]t is clear that the merits of [p]laintiff's dispute with [d]efendant EPPS [are] bound up/intertwined with [p]laintiff's contract with [d]efendant [Macklock]." The court did not address the procedural deficiencies in EPPS's motion or plaintiff's waiver argument. A December 12, 2023 order memorialized the motion court's decision.

This appeal followed. Plaintiff argues the motion court erred because: (1) EPPS's motion to compel was procedurally deficient; (2) EPPS is not entitled to enforce the arbitration provision of the Agreement because it is not a party to the Agreement and is not entitled to relief under the doctrine of equitable estoppel; (3) if EPPS is entitled to invoke the arbitration provision, it waived its right to do so by not moving to compel arbitration sooner; and (4) if EPPS is entitled to compel arbitration of plaintiff's claims, the appropriate remedy is to stay the complaint pending completion of the arbitration.

II.

8

We need not tarry long on plaintiff's procedural argument. Although EPPS's motion was not accompanied by a notice of motion, R. 1:6-2(a), or proof of service, R. 1:5-3, it is evident plaintiff was aware of the motion and filed written opposition. In addition, plaintiff's counsel appeared at oral argument. Thus, the procedural deficiencies in EPPS's motion did not affect plaintiff's ability to oppose EPPS's motion.

The motion court, in effect, relaxed the rules requiring EPPS to submit a notice of motion and proof of service with its motion. See Rule 1:1-2(a) ("[A]ny rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice."). We see no mistaken exercise of discretion by the motion court. Denying EPPS's motion on procedural grounds when plaintiff identified no obstacles to her ability to oppose the motion would have resulted in an injustice to EPPS.

We have considered plaintiff's argument that relaxation of the court rules was not warranted because EPPS engaged in a conspiracy to defraud her and others and conclude it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Plaintiff's allegations of a conspiracy to defraud have not been proven and would not, therefore, have been a proper basis on which to decline to relax the court rules.

A-1523-23

We turn to the plaintiff's substantive arguments. "We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law." Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020) (holding a trial court's interpretive analysis should not be deferred to unless an appellate court finds its reasoning persuasive)). "We owe no special deference to the trial court's interpretation of an arbitration provision, which we view 'with fresh eyes.'" Ibid. (quoting Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)).

In reviewing an order compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). However, that preference is not "without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

"When reviewing a motion to compel arbitration, courts apply a two-pronged inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement." Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J.

Super. 483, 497 (App. Div. 2021) (citing Martindale v. Sandvik, Inc., 173 N.J. 76, 83 (2002)).

A court must first apply "state contract-law principles" to determine "whether a valid agreement to arbitrate exists." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). "[A] party must agree to submit to arbitration." Hirsch, 215 N.J. at 187 (citing Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (explaining that "a judicial mandate to arbitrate must be predicated upon the parties' consent")). Under our state's defined contract law principles, a valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. See Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442-45 (2014).

Our review of the motion court's interpretation and construction of a contract also is de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). Our task is to "ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cnty. Imp. Auth., 404 N.J. Super. 514, 528 (App. Div. 2009). "Where the terms of a contract are clear, we enforce the contract as written and ascertain the intention

of the parties based upon the language." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017). "[U]nambiguous contracts are to be enforced as written . . . ." Grow Co., Inc. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008).

EPPS acknowledges that although it is mentioned in the Agreement, it is not a party to that contract. The plain text of the Agreement identifies plaintiff and Macklock as the "Parties" to the contract. In addition, plaintiff's claims against EPPS are not encompassed by the arbitration provision, which applies only to "any controversy, claim or dispute between the Parties." Plaintiff's waiver of her right to a jury trial and to participate in a class action, therefore, is limited to her claims against Macklock.

We disagree with the motion court's finding the arbitration provision terms should be broadly interpreted to include plaintiff's claims against EPPS. Nothing in the Agreement supports such an interpretation. To the contrary, the Agreement contains a provision that "confirms Client's understanding and agreement that the terms of any agreement between Client and EPPS . . . are separate from this Agreement . . . ." Plaintiff's legal relationship with EPPS is defined in the EFTA, which does not contain an arbitration provision.

A-1523-23

Nor do we find support in the record for the motion court's conclusion plaintiff is equitably estopped from avoiding submission of her claims against EPPS to arbitration. Our Supreme Court recognized "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through . . . estoppel." Hirsch, 215 N.J. at 188 (quoting Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 632 (2009) (internal quotations and emphasis omitted)). However, "[e]quitable estoppel should be used sparingly to compel arbitration. It is a theory 'designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment.'" Id. at 179-80 (quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003)). "Equitable estoppel is more properly viewed as a shield to prevent injustice rather than a sword to compel arbitration." Ibid.

"The essential principle" of the doctrine "is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct." Summer Cottagers' Assoc. v. City of Cape May, 19 N.J. 493, 503-04 (1955). "[W]hen parties have not expressly agreed to arbitrate their disputes . . . careful scrutiny is necessary to determine whether arbitration is nonetheless appropriate." Hirsch, 215 N.J. at 196.

13

To establish equitable estoppel, parties must prove that an opposing party "engaged in conduct, either intentionally or under circumstances that induced reliance, and that [they] acted or changed their position to their detriment." Knorr, 178 N.J. at 178 (citation omitted). In other words, equitable estoppel, unlike waiver, requires detrimental reliance. Ibid.

[Id. at 189 (alteration in original).]

Mere intertwinement of the claims subject to arbitration with claims against a party that is not a signatory to an arbitration agreement is insufficient to warrant application of equitable estoppel. As the Court explained:

Stated simply, we reject intertwinement as a theory for compelling arbitration when its application is untethered to any written arbitration clause between the parties, evidence of detrimental reliance, or at a minimum an oral agreement to submit to arbitration. . . . Estoppel cannot be applied solely because the parties and claims are intertwined, and, to the extent that [prior Appellate Division precedent] suggests otherwise in its rationale, it extends equitable estoppel beyond its proper scope.

. . . .

Further, the doctrine of equitable estoppel does not apply absent proof that a party detrimentally rel[ied] on another party's conduct. Reliance is critical when a party seeks to compel arbitration using that doctrine. It underlies the rationale for applying equitable estoppel in the first place, namely, "[t]he doctrine is designed to prevent a party's disavowal of previous conduct if such repudiation would not be responsive to the demands of

14

> justice and good conscience." Heuer v. Heuer, 152 N.J.
> 226, 237 (1998) (internal quotations omitted).
>
> [Id. at 192-93 (citation omitted).]

In attempting to show detrimental reliance, EPPS argues that because Macklock negotiates its agreements with its clients independently, EPPS reasonably expects the terms which govern the business relationship between Macklock and its clients would also govern the relationship between EPPS and those clients. We are not persuaded, given the clear language in the Agreement identifying only Macklock and plaintiff as signatories. Similarly, the arbitration provision limits its application to disputes between the "Parties," a term identified elsewhere in the Agreement as only Macklock and plaintiff. It was not reasonable for EPPS to assume the terms of a contract to which it was not a party would govern its legal relationship with plaintiff. See Hirsch, 215 N.J. at 194-95 (rejecting application of equitable estoppel where an arbitration clause "makes no mention" of the party seeking to apply estoppel and "does not embrace any express inclusion of claims involving" parties other than the signatories to the agreement.).

In addition, the Agreement expressly notes any agreement between plaintiff and EPPS is separate and apart from the Agreement. Plaintiff signed the EFTA, which constituted her separate authorization for EPPS to make

monthly withdrawals from her bank account to fulfill her contractual obligations to Macklock.

Notably, EPPS does not argue plaintiff engaged in conduct on which EPPS relied to its detriment. Plaintiff executed a contract with Macklock that identified only her and Macklock as the parties to the agreement. She signed the separate EFTA, which outlined her legal relationship with EPPS and did not contain an arbitration provision. One cannot reasonably conclude EPPS relied on this conduct, which does not evince an intent to submit claims between plaintiff and EPPS to arbitration, to its detriment. EPPS produced no evidence plaintiff took any action suggesting she agreed to resolve claims she might have against EPPS through arbitration.

Having determined the record does not support application of equitable estoppel, we reverse the December 12, 2023 order compelling plaintiff to submit her claims against EPPS to arbitration and dismissing the complaint. In light of our disposition, we need not address plaintiff's waiver argument. We note that if Macklock appears in the Law Division action and moves to compel arbitration of the claims plaintiff asserts against it, the court will have "a number of procedural tools at its disposal to manage the proceedings, including staying the

16

litigation during the pendency of" the arbitration of plaintiff's claims against Macklock. See id. at 196 n.5.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division